# Illinois Official Reports

## Supreme Court

***Beaman v. Freesmeyer*, 2019 IL 122654**

| | |
|---|---|
| Caption in Supreme Court: | ALAN BEAMAN, Appellant, v. TIM FREESMEYER *et al.*, Appellees. |
| Docket No. | 122654 |
| Filed | February 7, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Richard L. Broch, Judge, presiding. |
| Judgment | Appellate court judgment reversed and remanded. |
| Counsel on Appeal | David M. Shapiro and Locke E. Bowman, of Roderick and Solange MacArthur Justice Center, and Jeffrey Urdangen, of Bluhm Legal Clinic, both of Northwestern Pritzker School of Law, of Chicago, for appellant. |
| | Thomas G. DiCianni and Lucy B. Bednarek, of Ancel Glink Diamond Bush DiCianni & Krafthefer, P.C., of Chicago, for appellees. |
| | Arthur Loevy, Jon Loevy, and Steven Art, of Loevy & Loevy, of Chicago, for *amici curiae* former prosecutors Stuart Chanen *et al.* |

E. King Poor, James I. Kaplan, Thomas J. McDonell, and An Nguyen, of Quarles & Brady LLP, of Chicago, for *amicus curiae* the Innocence Network.

Tamara L. Cummings, of Western Springs, Bruce Bialorucki, of Springfield, Dan Hassinger, of Decatur, and Pasquale A. Fioretto, of Baum Sigman Auerbach & Neuman Ltd., of Chicago, for *amici curiae* Illinois Fraternal Order of Police Labor Council *et al.*

Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Kerrie Maloney Laytin, Assistant Corporation Counsel, of counsel), Patrick W. Hayes and John Milhiser, both of Springfield, Donald B. Leist, Corporation Counsel, of Peoria, Lee Roupas, of Wheaton, and Margo Ely, of Westchester, *amici curiae*.

Justices      JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1      The issue presented in this appeal is the proper test to satisfy the "commencement or continuance" prong of the tort of malicious prosecution. In 2008, this court reversed plaintiff Alan Beaman's conviction for the murder of his ex-girlfriend, Jennifer Lockmiller. *People v. Beaman*, 229 Ill. 2d 56, 82 (2008). We concluded that the State violated his constitutional right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose material and exculpatory information about a viable alternative suspect. *Beaman*, 229 Ill. 2d at 81.

¶ 2      Beaman initiated this action, alleging defendants Tim Freesmeyer, Dave Warner, and Frank Zayas, former officers with the Normal Police Department, acted maliciously in investigating him and aiding in his prosecution. Beaman asserted claims of malicious prosecution, intentional infliction of emotional distress, and conspiracy against those individual defendants. Beaman sought damages from defendant the Town of Normal, on theories of *respondeat superior* and indemnification. The circuit court of McLean County granted defendants' motion for summary judgment, finding no genuine issue of material fact as to Beaman's claims of malicious prosecution. The appellate court affirmed. 2017 IL App (4th) 160527. For the following reasons, we reverse and remand to the appellate court for further proceedings.

## I. BACKGROUND

¶ 4    On August 28, 1993, 21-year-old Jennifer Lockmiller, a student at Illinois State University, was found dead in her apartment in Normal, Illinois. A number of police officers from the Normal Police Department were involved in investigating Lockmiller's death. Those officers included defendants Detective Tim Freesmeyer, Detective Dave Warner, and Lieutenant Frank Zayas. Freesmeyer served as the principal detective in the investigation. Warner's role included serving as an evidence custodian and investigating one of the suspects, Stacey Gates. Zayas supervised Detective Freesmeyer and Detective Warner in the Lockmiller investigation until he retired in November 1994. Other individuals involved in the Lockmiller murder investigation included McLean County State's Attorney Charles Reynard and Assistant State's Attorney James Souk. Souk acted as the lead prosecutor in Beaman's criminal prosecution.

¶ 5    The murder investigation only focused on individuals Lockmiller knew. Police questioned Lockmiller's then-boyfriend, Michael Swaine, as well as former boyfriends, including Beaman, Stacey Gates, and Larbi John Murray.

¶ 6    A meeting was held on May 16, 1994, to determine whether to arrest Beaman for Lockmiller's murder. Those in attendance included State's Attorney Reynard, Assistant State's Attorney Souk, Freesmeyer, Zayas, Normal Chief of Police James Taylor, and Detective Tony Daniels. During the meeting, Reynard decided to charge Beaman. Souk agreed. At his deposition in this case, Daniels testified he suggested a list of investigative avenues to pursue before arresting Beaman. Souk responded, "I think we've got our guy," and stated, "we went as far as we can with this case." Souk said they were going to issue a warrant for Beaman's arrest.

¶ 7    Prior to trial, the State filed a motion *in limine* to exclude evidence of Lockmiller's relationships with men other than Beaman and Swaine. The State argued that Beaman should not be allowed to offer alternative-suspect evidence unless he could establish it was not remote or speculative. The prosecutor informed the court that the State did not possess nonspeculative evidence of a third-party suspect. The trial court reserved ruling on the motion.

¶ 8    Later, the State and Beaman's defense counsel discussed Lockmiller's relationship with an individual identified as "John Doe," namely, Larbi John Murray. Souk told the court Doe had "nothing to do with the case." Souk did not disclose to Beaman's trial counsel Murray's criminal records that exposed his drug and steroid use and incidents of domestic violence against a subsequent girlfriend, nor did Souk disclose his incomplete polygraph examination. Beaman's trial counsel had no specific evidence pointing to another individual who could have committed the offense. The trial court granted the State's motion *in limine*.

¶ 9    At trial, the State argued that all of the other possible suspects were excluded due to alibis:

"Did we look at Mr. Swaine? You bet we did. Did we look at [Gates]? You bet we did. Did we look at a lot of people and interview a lot of witnesses? You bet we did. And guess who sits in the courtroom *** with the gap in his alibi still unclosed even after all this?"

¶ 10    The jury found Beaman guilty of first degree murder. He was sentenced to 50 years of imprisonment. Beaman's conviction was affirmed on appeal. *People v. Beaman*, 279 Ill. App. 3d 1115 (1996) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11    In April 1997, Beaman filed a petition for postconviction relief. Beaman alleged, in part, that the State violated his right to due process by failing to disclose material information on

Murray's viability as a suspect. An evidentiary hearing was held on Beaman's petition. After the hearing, the circuit court denied Beaman's postconviction petition. The appellate court affirmed. *People v. Beaman*, 368 Ill. App. 3d 759 (2006).

¶ 12    In 2008, this court found the State violated Beaman's constitutional right to due process of law when it failed to disclose the evidence related to Murray and reversed the circuit court order denying Beaman's postconviction petition. *Beaman*, 229 Ill. 2d at 81-82. In that appeal, we summarized the undisclosed evidence as consisting of four points: "(1) [Murray] failed to complete the polygraph examination; (2) [Murray] was charged with domestic battery and possession of marijuana with intent to deliver prior to [Beaman's] trial; (3) [Murray] had physically abused his girlfriend on numerous prior occasions; and (4) [Murray's] use of steroids had caused him to act erratically." *Beaman*, 229 Ill. 2d at 74. We concluded that the State's case against Beaman was "tenuous" and that the evidence withheld by the State was favorable to Beaman because it supported Murray's viability as an alternative suspect. *Beaman*, 229 Ill. 2d at 77-78. We determined that "[w]e cannot have confidence in the verdict finding [Beaman] guilty of this crime given the tenuous nature of the circumstantial evidence against him, along with the nondisclosure of critical evidence that would have countered the State's argument that all other potential suspects had been eliminated from consideration." *Beaman*, 229 Ill. 2d at 81. We vacated Beaman's conviction and remanded the case to the circuit court for further proceedings. *Beaman*, 229 Ill. 2d at 82.

¶ 13    On remand, the State declined to reprosecute Beaman and dismissed the charges against him. Beaman was released from prison in June 2008. In April 2013, the State of Illinois certified his innocence. On January 9, 2015, Governor Pat Quinn pardoned Beaman "based upon innocence as if no conviction."

¶ 14    In January 2010, Beaman filed a federal section 1983 (42 U.S.C. § 1983 (2006)) civil suit against defendants Freesmeyer, Warner, and Zayas, as well as against Souk, Reynard, and other detectives. Beaman alleged three federal claims: (1) defendants acting individually and in conspiracy withheld exculpatory evidence in violation of *Brady* (individual liability), (2) defendants conspired to deprive Beaman of exculpatory evidence (conspiracy liability), and (3) defendants failed to intervene to prevent the violation of his rights. Beaman included state law claims for malicious prosecution, civil conspiracy, and intentional infliction of emotional distress against the Town of Normal.

¶ 15    The district court dismissed claims against Souk and Reynard based on absolute or qualified immunity. The claims against the other detectives, who are not named defendants in this case, were voluntarily dismissed after discovery revealed they were not involved in the suppression of evidence. The district court granted summary judgment on the federal claims to the remaining defendants, Freesmeyer, Warner, and Zayas. *Beaman v. Souk*, 7 F. Supp. 3d 805, 832 (C.D. Ill. 2014).

¶ 16    The Seventh Circuit Court of Appeals affirmed. *Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015). Neither the district court nor the Seventh Circuit Court of Appeals addressed the state law claims of malicious prosecution, intentional infliction of emotional distress, or conspiracy against the Town of Normal for lack of jurisdiction. *Beaman*, 776 F.3d at 506.

¶ 17    In April 2014, Beaman filed the civil action that is the subject of this appeal against defendants Freesmeyer, Warner, Zayas, and the Town of Normal, pleading the state law claims that the federal court had dismissed without prejudice. Beaman's complaint alleged malicious

- 4 -

prosecution, intentional infliction of emotional distress, and civil conspiracy against all defendants, as well as claims of *respondeat superior* and indemnification against the Town of Normal for recovery of damages.

¶ 18    Defendants moved for summary judgment. Defendants maintained that no evidence established a genuine issue of material fact on four of the five elements of Beaman's malicious prosecution claim. Defendants contended, as a result, they were entitled to judgment as a matter of law on the malicious prosecution claim and the remaining claims that were predicated on the contention that he was maliciously prosecuted.

¶ 19    The circuit court granted defendants' motion for summary judgment, reasoning that Beaman could not satisfy the elements to establish a malicious prosecution claim. The court found the prosecutors who handled the case, not the defendant officers, decided to prosecute Beaman. The court highlighted Daniels's deposition testimony and pointed to his statement that, during the May 1994 meeting with investigating officers and lead prosecutors, Souk rejected Daniels's suggestions to investigate other avenues. Souk stated the investigation was complete and an arrest warrant would be issued for Beaman. The court found that defendants "did not exert any unusual influence on the prosecutors which caused a malicious prosecution to take place against [Beaman]." The circuit court dismissed the remaining claims as dependent on the malicious prosecution claim.

¶ 20    The appellate court affirmed the grant of summary judgment on the "commencement or continuance" element of malicious prosecution and did not address the circuit court's other grounds for dismissing that claim. 2017 IL App (4th) 160527. We allowed Beaman's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017). We allowed The Innocence Network; former state and federal prosecutors Stuart Chanen, William Conlon, Tyrone Fahner, Jonathan King, Scott Lassar, Jeremy Margolis, Ronald Safer, John Schmidt, Jeffrey Singer, James Thompson, Scott Turow, and Dan Webb; the City of Chicago, Illinois Municipal League, Illinois Prosecutors Bar Association, Illinois State's Attorneys Association, Intergovernmental Risk Management Agency, and City of Peoria (the governmental *amici*); and the Illinois Fraternal Order of Police Labor Council, Illinois Fraternal Order of Police, Illinois Troopers Lodge No. 41, and Chicago Fraternal Order of Police Lodge No. 7 to file *amicus curiae* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 21                                              II. ANALYSIS

¶ 22    In this appeal, Beaman challenges the circuit court's grant of summary judgment in favor of defendants. Section 2-1005(c) of the Code of Civil Procedure provides that summary judgment is proper when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Summary judgment is a drastic means of disposing of litigation and "should be allowed only when the right of the moving party is clear and free from doubt." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). In ruling on a motion for summary judgment, we must construe the pleadings, depositions, admissions, and affidavits strictly

against the movant and liberally in favor of the opponent. *Adams*, 211 Ill. 2d at 43. We review an appeal from a ruling on a motion for summary judgment *de novo*. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998).

¶ 23    A malicious prosecution action is a civil tort brought by a plaintiff "for recovery of damages which have proximately resulted to person, property or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and with malice." *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill. 2d 291, 295 (1965); see also 26 Edwin A. Jaggard, Cyclopedia of Law and Procedure 6 (William Mack ed. 1907) (cited here as 26 Cyc.) ("Malicious prosecution, regarded as a remedy, is a distinctive action *ex delicto* for the recovery of damages to person, property, or reputation, shown to have proximately resulted from a previous civil or criminal proceeding, which was commenced or continued without probable cause, but with malice, and which has terminated unsuccessfully.").

¶ 24    This court has long recognized that "suits for malicious prosecution are not favored in law." *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 44 (1980); *Schwartz v. Schwartz*, 366 Ill. 247, 250 (1937); *Shedd v. Patterson*, 302 Ill. 355, 359-60 (1922). This court has explained:

> "Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. Persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of unfounded suits by those accused. It was for the purpose of encouraging and protecting those who exercise their constitutional right to appeal to our courts for redress of private or public grievances that the circumstances in which malicious prosecution actions may be brought have been rather narrowly circumscribed." *Joiner*, 82 Ill. 2d 44-45.

¶ 25    When a person is wrongfully convicted of a crime, however, it has profound consequences. Nevertheless, malicious prosecution actions are subject to more stringent limitations than other tort actions and will be allowed only when all of the requirements for maintaining an action have been met. See 52 Am. Jur. 2d *Malicious Prosecution* § 5 (2018); see also *Joiner*, 82 Ill. 2d at 45 (same); *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996) (same).

¶ 26    To state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." (Internal quotation marks omitted.) *Swick*, 169 Ill. 2d at 512; *Ritchey v. Maksin*, 71 Ill. 2d 470, 475 (1978); *Freides*, 33 Ill. 2d at 295. The absence of any of these elements bars a plaintiff's malicious prosecution claim. *Swick*, 169 Ill. 2d at 512.

¶ 27    The circuit court determined that Beaman could not satisfy the first four elements to establish a malicious prosecution claim. The appellate court affirmed the circuit court, finding no genuine issue of material fact on the "commencement or continuance" element of the malicious prosecution tort, and did not consider whether Beaman could satisfy the other elements to establish a malicious prosecution action. Accordingly, our analysis will focus on the "commencement or continuance" prong of a malicious prosecution action.

¶ 28    Beaman contends that the appellate court applied the wrong standard to the "commencement or continuance" prong. Beaman submits that three different approaches have developed to analyze the "commencement or continuance" element. Plaintiff describes these

approaches as (1) the "significant role" test; (2) the "advice and cooperation" test; and (3) the "pressure, influence, or misstatement" test.

¶ 29    According to Beaman, the "significant role" test is the predominant rule in Illinois, and it provides that liability for malicious criminal prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Frye v. O'Neill*, 166 Ill. App. 3d 963, 975 (1988) (citing 54 C.J.S. *Malicious Prosecution* §§ 18, 19 (1987)); see also *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 72; *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348-49 (2000); *Barnett v. Baker*, 2017 IL App (1st) 152443-U, ¶ 40. Beaman contends that the "significant role" test is routinely employed by federal courts in malicious criminal prosecution cases. See, *e.g.*, *Mitchell v. City of Elgin*, No. 14 CV 3457, 2016 WL 492339, at *7-8 (N.D. Ill. Feb. 9, 2016), *rev'd in part on other grounds*, ___ F.3d ___, 2019 WL 76881 (7th Cir. 2019); *Collier v. City of Chicago*, No. 14 C 2157, 2015 WL 5081408, at *9 (N.D. Ill. Aug. 26, 2015); *Mosley v. Pendarvis*, No. 13 C 5333, 2015 WL 2375253, at *4 (N.D. Ill. May 15, 2015); *Green v. City of Chicago*, No. 11 C 7067, 2015 WL 2194174, at *6 (N.D. Ill. May 7, 2015); *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *12 (N.D. Ill. Feb. 6, 2014); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 794 (N.D. Ill. 2013); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 928 (N.D. Ill. 2013); *Hunt v. Roth*, No. 11 C 4697, 2013 WL 708116, at *8 (N.D. Ill. Feb. 22, 2013); *Reno v. City of Chicago*, No. 10 C 6114, 2012 WL 2368409, at *6 n.2 (N.D. Ill. June 21, 2012); *Brown v. Navarro*, No. 09 C 3814, 2012 WL 1986586, at *7 (N.D. Ill. June 4, 2012); *Phipps v. Adams*, No. 11-147-GPM, 2012 WL 686721, at *3 (S.D. Ill. Mar. 2, 2012); *Johnson v. Arroyo*, No. 09 C 1614, 2010 WL 1195330, at *3 (N.D. Ill. Mar. 22, 2010); *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 686 (N.D. Ill. 2009); *Lipscomb v. Knapp*, No. 07 C 5509, 2009 WL 3150745, at *11-12 (N.D. Ill. Sept. 30, 2009); *Montgomery v. City of Harvey*, No. 07 C 4117, 2008 WL 4442599, at *7 (N.D. Ill. Sept. 29, 2008); *Bruce v. Perry*, No. 03-CV-558-DRH, 2006 WL 1777760, at *8 (S.D. Ill. June 23, 2006); *Montes v. DiSantis*, No. 04 C 4447, 2005 WL 1126556, at *11-12 (N.D. Ill. May 10, 2005); *Patterson v. Burge*, 328 F. Supp. 2d 878, 900-01 (N.D. Ill. 2004); *Harris v. City of Harvey*, No. 97 C 2823, 2000 WL 1468746, at *9 (N.D. Ill. Sept. 29, 2000). Beaman submits that federal courts also use the "significant role" test for instructing the jury in malicious prosecution cases against police officers. See, *e.g.*, Final Jury Instructions, *Brown v. Spain*, No. 11-C-08403, 2014 WL 6813086 (N.D. Ill. Oct. 16, 2014) ("An officer commences or continues the prosecution of a person if the officer played a significant role in causing the commencement or the continuation of the prosecution of the person."); Instructions to the Jury, *Payne v. Maher*, No. 11-CV-6623, 2014 WL 7684881 (N.D. Ill. Nov. 14, 2014) ("A person causes a criminal proceeding to be commenced or continued if he plays a significant role in the initiation or continuation of criminal charges at any time from the arrest through the conclusion of the criminal case."); Jury Instructions, *Wells v. Johnson*, No. 06-CV-06284, 2012 WL 1569523 (N.D. Ill. Apr. 19, 2012) ("A person commences or continues a proceeding if he initiated the proceeding, if his participation was of so active and positive a character as to amount to advice and cooperation, or if he played a significant role in causing the prosecution of the Plaintiff.").

¶ 30    Beaman describes the "advice and cooperation test" as providing that the "commencement or continuance" element is met if the officer's participation was "so active and positive as to amount to advice and cooperation." See, *e.g.*, *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 647 (2002); *Collier*, 2015 WL 5081408, at *9.

- 7 -

¶ 31    Finally, Beaman explains the "pressure, influence, or misstatement test." According to Beaman, this test, as applied by the appellate court here, provides the plaintiff must establish that an "officer pressured or exerted influence on the prosecutor's decision or made knowing misstatements upon which the prosecutor relied." 2017 IL App (4th) 160527, ¶ 58.

¶ 32    Defendants counter that these supposedly different approaches are actually consistent with each other, even if some of the courts' language differs, and that all require proof of causation. According to defendants, all of Beaman's purportedly different approaches look for some action by the police that affects the prosecutor's independent judgment, in other words, actions that are the proximate cause of the prosecution.

¶ 33    We agree with defendants that, while cases may use differing language when analyzing the commencement or continuance element, in each case, the court examined the defendant's conduct or participation in the commencement or continuation of criminal proceedings against the plaintiff. In other words, the relevant inquiry is whether the officer proximately caused the commencement or continuance of the criminal proceeding.

¶ 34    It is useful to examine the history of the common-law tort of malicious prosecution. In the 1800s, "it was common for criminal cases to be prosecuted by private parties." *Rehberg v. Paulk*, 566 U.S. 356, 364 (2012). Those private parties did not enjoy immunity from suit; rather, "a private complainant who procured an arrest or prosecution could be held liable in an action for malicious prosecution if the complainant acted with malice and without probable cause." *Rehberg*, 566 U.S. at 364. "Both English and American courts routinely permitted plaintiffs to bring actions alleging that the defendant had made a false and malicious accusation of a felony to a magistrate or other judicial officer." *Briscoe v. LaHue*, 460 U.S. 325, 351 (1983) (Marshall, J., dissenting, joined by Blackmun, J.). After 1871, criminal cases were increasingly prosecuted by public officials who, unlike private prosecutors, were absolutely immune from tort claims for malicious prosecution. *Rehberg*, 566 U.S. at 365. However, courts have continued to recognize claims for malicious prosecution against private individuals whose conduct led to the plaintiff's criminal prosecution.

¶ 35    In Illinois, common-law malicious prosecution actions have long been recognized. See, *e.g.*, *Richey v. McBean*, 17 Ill. 63, 64 (1855) (recognizing that an action for malicious prosecution "must charge that the defendant was actuated by malice in setting on foot the prosecution, and that the same was done without probable cause"); see also *Hurd v. Shaw*, 20 Ill. 354, 355 (1858) (rejecting a malicious prosecution claim where there was no evidence that the defendant was the prosecutor of the charge against the plaintiff "or that he originated the indictment").

¶ 36    This court first addressed whether a defendant who did not directly initiate the criminal proceedings against the plaintiff could be held liable in a malicious prosecution action in *Gilbert v. Emmons*, 42 Ill. 143 (1866). In *Gilbert*, the defendant's business partner began the prosecution against the plaintiff by swearing out an affidavit needed to issue a warrant and "directed the officer in its execution." *Gilbert*, 42 Ill. at 146. The court in *Gilbert* explained that the defendant could be liable only if "he either directly participated in causing the arrest, or advised it to be made." *Gilbert*, 42 Ill. at 146. The defendant's mere knowledge of or consent to the actions of his business partner was insufficient unless that " 'consent' should be of so active and positive a character as to amount to advice and co-operation." *Gilbert*, 42 Ill. at 147. If the defendant took some affirmative action to "advise and encourage the arrest" that led to

the prosecution, then the defendant could be liable. *Gilbert*, 42 Ill. at 147. If, however, the defendant merely allowed his partner "to follow the dictates of his own judgment, without interference on his part," then he would not be liable. *Gilbert*, 42 Ill. at 147.

¶ 37     The *Gilbert* court remanded the case for a new trial because the jury was erroneously instructed on this issue. Thus, in a case where someone other than the defendant took the official action of initiating the criminal prosecution, *Gilbert* established the "active and positive" advice or cooperation test.

¶ 38     As the governmental *amici* aptly point out in their brief, "historically, what is now the 'commence or continue' element was originally stated as two elements" that highlighted the legal cause element and that, over time, the two elements were collapsed into what is now stated as a single "commencement or continuance" element. Our research has revealed that in *Glenn v. Lawrence*, 280 Ill. 581 (1917), this court set forth six elements that will sustain an action for malicious prosecution:

> "(1) the commencement or continuance of an original, criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. 26 Cyc. at 8." *Glenn*, 280 Ill. at 585.

¶ 39     The Cyclopedia of Law and Procedure, published in 1907 and cited by *Glenn*, sets forth these same six elements. See 26 Cyc. at 8. The Cyclopedia of Law and Procedure further explains that, "[t]o sustain the action [for malicious prosecution], it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion." 26 Cyc. at 17.

¶ 40     In 1965, this court continued its reference to six elements for maintaining a cause of action for malicious prosecution in *Freides* (33 Ill. 2d at 295). In 1978, however, in *Ritchey*, this court cited *Freides* but collapsed the first two elements into one: "the commencement or continuance of an original criminal or civil judicial proceeding by the defendant," reducing the number of elements required to maintain an action for malicious prosecution from six to five. *Ritchey*, 71 Ill. 2d at 475. Later, this court continued to use five elements to evaluate malicious prosecution claims. See *Joiner*, 82 Ill. 2d at 45; *Swick*, 169 Ill. 2d at 512. Despite the variation in the language and elements of a malicious prosecution cause of action, the "commence or continue" element has always required the defendant's conduct to be the legal cause of the commencement or continuation of the underlying criminal proceedings. Indeed, all of the parties agree that a malicious prosecution action requires proof of legal causation.

¶ 41     The issue in this case concerns the proper approach for determining when a police officer commences or continues a prosecution, *e.g.*, when the defendant's conduct is the legal cause of the commencement or continuation of the original criminal proceedings. Plaintiff interprets differing language used by courts as different legal standards or tests applied in cases against police officers to establish the "commencement or continuation" prong. We, however, agree with defendants that all of these approaches are aimed at examining the actions by the police that may have caused the plaintiff's wrongful prosecution in the original criminal proceeding. For example, the court in *Cervantes v. Jones*, 23 F. Supp. 2d 885 (N.D. Ill. 1998), examined

whether, under Illinois law, a plaintiff could meet the commencement or continuance prong requirements for malicious prosecution, stating:

> "In order to be liable for malicious prosecution, 'a defendant either must have initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation.' *Denton v. Allstate Ins. Co.*, [152 Ill. App. 3d 578, 583 (1986)]. Put another way, '[l]iability for malicious prosecution … extends to [police officers] who played a significant role in causing the prosecution of the plaintiff[.]' [*Frye*, 166 Ill. App. 3d at 975]. *See also* [*Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)] (plaintiff must show that the officer used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure the prosecution); *Newsome v. James*, [968 F. Supp. 1318, 1323 (N.D. Ill. 1997)] (stating the issue as whether the police officer 'got the ball rolling in the unwarranted prosecution' of the plaintiff)." *Cervantes*, 23 F. Supp. 2d at 888.

Thus, the differing language used in malicious prosecution cases is based on a causal analysis determining whether the defendant's actions proximately caused the plaintiff's wrongful prosecution.

¶ 42    With this background in mind, we now examine whether the appellate court properly determined that Beaman failed to meet the "commencement or continuation" element in granting defendants' motion for summary judgment. The appellate court held that Beaman was required to "establish that officer[s] pressured or exerted influence on the prosecutor's decision or made knowing misstatements upon which the prosecutor relied." 2017 IL App (4th) 160527, ¶ 58. The appellate court's decision rested heavily on its observation that " '[t]he State's Attorney, not the police, prosecutes a criminal action' " and a need to "protect[ ] officers in their performance of their police work." (Internal quotation marks omitted.) 2017 IL App (4th) 160527, ¶¶ 57-58 (quoting *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017)).

¶ 43    This court has recognized that prosecutors ordinarily rely on police and other agencies to investigate criminal acts. *People v. Ringland*, 2017 IL 119484, ¶ 24. Significantly, " '*it is the recognized practice that the State's Attorney sensibly defers to the investigative duties of the police.*' " (Emphasis in original.) *Ringland*, 2017 IL 119484, ¶ 24 (quoting *People v. Wilson*, 254 Ill. App. 3d 1020, 1039 (1993)). Contrary to the appellate court's standard, however, this court established long ago, in *Gilbert*, that a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors. See *Gilbert*, 42 Ill. at 147. Illinois courts have adhered consistently to this standard, holding that liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Frye*, 166 Ill. App. 3d at 975 (citing 54 C.J.S. *Malicious Prosecution* §§ 18, 19 (1987)); see also *Bianchi*, 2016 IL App (2d) 150646, ¶¶ 72-73; *Rodgers*, 315 Ill. App. 3d at 348-49.

¶ 44    "Liability thus depends on whether the defendant was actively instrumental in causing the prosecution, and the presumption of prosecutorial independence can be overcome by showing that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." 52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018). Police officers may be subject to liability for malicious

prosecution "[i]f they initiate a criminal proceeding by presentation of false statements, or by withholding exculpatory information from the prosecutor." 3 Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, The Law of Torts § 587, at 392 (2d ed. 2011) (cited here as Law of Torts).

¶ 45 The established definition of "commence or continue" reflects that the fundamental purposes of tort law are to hold wrongdoers liable for foreseeable consequences of their actions and to deter wrongful conduct. See *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 259 (1987); Restatement (Second) of Torts § 901 (1979). As the former state and federal prosecutors submit in their *amicus* brief, liability for malicious prosecution "calls for a commonsense assessment" of those persons who played a significant role in the criminal case. This significant role assessment necessarily includes those persons whose participation in the criminal case was so "active and positive" to "amount to advice and co-operation" (*Gilbert*, 42 Ill. at 147) or those persons who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution" (52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018)). In other words, the separate standards cited by Beaman actually fall within the "significant role" standard for determining whether a person proximately caused a plaintiff's wrongful conviction.

¶ 46 Thus, liability for malicious prosecution requires an examination of whether the defendant's conduct is both the cause in fact and a proximate cause of the commencement or continuation of the original criminal proceedings. Law of Torts at 390; see also 26 Cyc. at 17 ("To sustain the action [for malicious prosecution], it must affirmatively appear as a part of the case *** that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion."). In determining whether the defendants' conduct was the proximate cause of the commencement or continuation of the original criminal proceedings, the court must examine whether the defendants played a significant role in the plaintiff's prosecution.

¶ 47 We conclude that the appellate court's standard failed to consider whether the defendants proximately caused the commencement or continuance of the criminal proceeding against Beaman. The appellate court focused its inquiry on whether the "officer[s] pressured or exerted influence on the prosecutor's decision or made knowing misstatements upon which the prosecutor relied." 2017 IL App (4th) 160527, ¶ 58. On remand, the appellate court must examine whether the defendants' conduct or actions proximately caused the commencement or continuance of the original criminal proceeding by determining whether defendants played a significant role in Beaman's prosecution.

¶ 48                                        III. CONCLUSION

¶ 49 For the foregoing reasons, we reverse the judgment of the appellate court and remand the cause for further proceedings consistent with this opinion.

¶ 50 Appellate court judgment reversed and remanded.