NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220479-U

NO. 4-22-0479

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SARAH SHORT, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Peoria County |
| CSS AUDIO, INC. and PREMIERE AUDIO-VISUAL, | ) | No. 18L124 |
| INC., | ) | |
| Defendants-Appellees. | ) | Honorable |
| | ) | Michael D. Risinger, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The appellate court affirmed, finding defendants were entitled to judgment as a matter of law.

¶ 2       In November 2018, plaintiff, Sarah Short, filed a first-amended complaint against defendants, CSS Audio, Inc. (CSS Audio) and Premiere Audio-Visual, Inc. (Premiere), seeking damages for injuries she suffered when a Genie lift, owned by CSS Audio, fell on her as she unloaded it from Premiere's trailer. In March 2022, defendants filed separate motions for summary judgment. Following a May 2022 hearing, the circuit court granted judgment in defendants' favor. Plaintiff appeals, arguing the court's decision was in error. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In November 2018, plaintiff filed a complaint alleging one count of negligence against defendants. The complaint alleged that on February 1, 2018, plaintiff and another Peoria Civic Center employee were unloading a Genie lift—a ground-supported device similar to a forklift and operated by crank—owned by CSS Audio from Premiere's trailer onto the civic center's loading dock. As plaintiff moved the lift down the trailer's ramp, "the Genie lift got stuck or the wheels were otherwise not rolling properly when [it] reached the loading dock," which caused the lift to fall on plaintiff. The complaint alleged defendants "had a duty to exercise ordinary and reasonable care to see that the aforesaid trailer and ramp was reasonably safe for the use of those lawfully upon and in the premises." Plaintiff contended defendants violated that duty by committing one or more of the following acts:

"a. Failed to take remedial measures to correct the dangerous condition of the improperly placed and/or installed ramp at the aforesaid location;

b. Failed to warn employees of [the civic center], including the Plaintiff, of the dangers that existed at the aforesaid location;

c. Permitted the Genie lift to be unloaded by an improperly placed and/or installed ramp from the aforementioned trailer to the loading dock;

d. Failed to ensure that there were a sufficient number of people to unload the Genie lift from the aforementioned trailer to the loading dock;

e. Negligently backed the aforementioned trailer into the loading dock of the Peoria Civic Center so as to permit an unsafe condition to exist for unloading;

f. Negligently placed the unloading ramp from the aforementioned trailer to the loading dock so as to permit a dangerous and unsafe condition to exist;

g. Negligently supervised the unloading of the equipment from the aforementioned trailer to the loading dock;

h. Negligently and inadequately supervised the unloading of the equipment;

i. Negligently provided dangerous and/or unsafe conditions to the employees of [the civic center], including the Plaintiff, at or near the loading dock;

j. Negligently understaffed the unloading of equipment owned by CSS [Audio] so as to permit the unsafe unloading of equipment and thus causing injury to the Plaintiff;

k. Allowed the Genie lift to be unloaded in a manner so as to create an unreasonably dangerous and hazardous condition when CSS [Audio] knew or should have reasonably known that unloading of the Genie lift posed an unreasonable risk of harm to [civic center] employees, including the Plaintiff;

l. Failed to adequately and properly supervise its agents, employees, and servants so as to ensure the safe unloading of equipment from the aforementioned trailer; and

m. Was otherwise careless and/or negligent."

Plaintiff further alleged, as a proximate result of one or more of defendants' actions, she was "permanently injured" and "suffered great pain and anguish, and disability both in mind and body."

¶ 5 Defendants filed motions for summary judgment in March 2022, asserting no genuine issue of material fact existed on the element of duty and they were entitled to judgment in their favor. In support of their motions, defendants attached an accompanying memorandum of law as well as the discovery depositions of several civic center employees, including plaintiff,

William Kenney, Thomas Chladny, Jeff Wald, and Dan Evans; Premiere's assistant director of audio and visual, Michael Reid; and CSS Audio employees, Daniel Grimm and David Batton.

¶ 6        In her deposition, plaintiff testified she started working as a stagehand for the civic center in 2007. As a stagehand, plaintiff's duties were to "to unload equipment out of semitrucks, trailers, whatever the show shows up with" and "take the cases or equipment *** down the ramp and into wherever it's going." Plaintiff further testified she received "[m]ostly on-the-job training," stating, "there's not really much training for pushing-a-case-off-a-truck kind of thing."

¶ 7        On the date of the accident, plaintiff was sent to "the loading dock *** facing Kumpf Street" to unload equipment for an event hosted by the civic center. The loading dock was clear of debris. The configuration of Premiere's trailer was "how it's supposed to be," with its ramp "folded down[,] and then there was a little metal plate that folded down that touched the concrete." Plaintiff explained she had, on numerous occasions, unloaded trailers with similar configurations over the course of her employment. She also had no concerns regarding the ramp's stability or safety as she unloaded the trailer.

¶ 8        Plaintiff testified the Genie lift was the final piece of equipment on Premiere's trailer. Although plaintiff received no instruction on how to move the lift on the date of the accident, she testified she safely unloaded similar lifts in the past and understood them to be "very top heavy and very tippy." When asked to describe how the accident occurred, plaintiff stated:

> "I went onto the trailer to get the Genie Lift. Jeff Wald was there. He grabbed one
>
> end. I grabbed the other end. We were moving it towards the front of the trailer. I

was guiding it down the ramp, he was guiding it from behind, and as we got to the bottom, the Genie Lift started falling and landed on me."

In plaintiff's opinion, the unevenness of the ramp on the concrete caused the lift to fall as she and Wald unloaded it from the trailer.

¶ 9  Michael Reid, Premiere's assistant director of audio and visual, testified CSS Audio hired Premiere to provide video equipment "for a show in the upstairs of the ballroom at the [Peoria] Civic Center" on February 1, 2018. In addition to the equipment being delivered for the event, Reid testified Premiere brought two Genie lifts to be returned to CSS Audio. Reid explained, "typically *** if we have a piece of equipment of theirs or they have something of ours[,] if we don't need it until we meet up in a show at some point[,] we usually bring it back the next show that we are at." According to Reid, stagehands had, in the past, unloaded equipment not used at an event and he was unaware of any rule or regulation prohibiting stagehands from doing so.

¶ 10  Reid testified he pulled into the civic center's unloading space, opened the ramp door of the trailer, unfolded the hinged transition piece (the metal plate at the off-end of the ramp), and waited for the stagehands to begin unloading. Reid observed nothing defective with the ramp that day and held no reservations regarding the ramp's safety. With respect to the hinged extension, Reid explained, "If it wasn't folded out, it would be folded up onto the ramp and it would be almost impossible to unload anything *** because you would try to roll stuff out and it would stop before it got out." He also stated the distance from the leading edge of the ramp to where it met the concrete was "just shy of three-quarter inch." The Genie lifts were the final pieces of equipment taken off the trailer. Although he warned the stagehands to be careful, Reid gave no specific instructions on to how to unload the lifts. After the first Genie lift was unloaded,

Reid unstrapped the second lift, heard a noise, "and turned around in time to see the [second] Genie lift falling over onto [plaintiff]."

¶ 11    Daniel Grimm, a manager employed by CSS Audio, testified he drove a "box truck" with "the sound and lighting equipment" to the civic center on February 1, 2018. He further testified CSS Audio hired Premiere as a subcontractor to provide video equipment and stated the Genie lifts belonging to CSS Audio "were being transferred from [Premiere's] trailer into our truck." Upon arriving, Grimm conducted a "site survey" and prepared the truck for unloading. Due to civic center policy, "[a]ny equipment unloaded from vehicles ha[d] to be handled by union stage[-]hand loaders." Grimm told the stagehands what items needed to be taken out but did not specifically instruct them on how to unload CSS Audio's truck. Grimm stated he saw Premiere's trailer that morning and further testified the trailer's hinged extension was present, attached to the ramp, and unfolded. He also did not observe any Premiere employee instructing stagehands on how to unload anything. Grimm testified he was securing the first Genie lift in CSS Audio's truck when the accident occurred. He further stated, "[W]hen I could see what happened and came around the corner, *** I [saw] that the Genie [lift] had tipped over and [plaintiff] was under it."

¶ 12    William Kenney, the director of operations at the civic center, testified he completed a "follow-up report" after being informed of the accident. Kenney explained, pursuant to their union contract, stagehands were responsible for unloading equipment from trailers arriving at the facility. However, Kenney acknowledged the civic center did not provide "a specific training program on loading and unloading trailers." Over the course of his investigation, Kenney inspected Premiere's trailer and "felt like the trailer and the ramp were in good condition." He also noticed a "a little bit of a dropoff" of approximately three-quarters of

- 6 -

an inch where the ramp met the concrete and observed "no other way to position this trailer *** to not have that drop."

¶ 13 David Batton testified he had unloaded "[a] lot" of Genie lifts as an audio and lighting technician at CSS Audio and explained his role was to help "[s]et up, load and unload trucks and get gear ready for shows and run shows." After parking the truck in the loading dock with Grimm, Batton stated they "went upstairs to check out the room, we drop[ped] off our bags and then we wait[ed] for the stagehands to show up." At the time of the accident, Batton was inside Premiere's trailer speaking with Reid. Batton did not notice any defects or dangerous conditions with Premiere's trailer while he was in it. However, Batton observed the Genie lift as it fell over and testified, "[i]t was being pushed from up above," which was improper. Batton explained "[plaintiff] was on the bottom part of it and Jeff Wald was at the top pushing, like coming—walking forward down the ramp and she was going backwards down the ramp."

¶ 14 Thomas Chladny, a civic center stagehand and union president, testified he "did not see the actual accident itself." However, Chladny stated he saw the "aftermath" and recalled Wald telling him "he had a hand on the top of [the lift] and he stumbled and it let go." With respect to Premiere's ramp, Chladny did not observe anything unusual or out of the ordinary. He further stated, "the amount of *** smooth to the ground ramps *** is almost nonexistent, they all have some sort of a drop." According to Chladny, Premiere's ramp would be "considered a suitable ramp," and it was "a normal thing" to unload Genie lifts from trailers like it.

¶ 15 In his deposition, Dan Evans testified he was an event services manager employed by the civic center and assigned stagehands their tasks. Evans explained stagehands "unload and load trucks" and assist with setting up any equipment brought by an outside company. Despite not seeing the Genie lift fall on plaintiff, Evans stated, based on where she was lying, "it seemed

like when the Genie lift got to the bottom of the ramp *** the center of gravity was just too much and it tipped and [plaintiff] was in the wrong place at the wrong time." Evans noticed nothing dangerous or defective when he observed Premiere's trailer and stated it was customary for stagehands to unload lifts from similarly configured ramps. He further stated it was not unusual for stagehands to swap equipment between trailers.

¶ 16        Jeff Wald testified he was employed as a stagehand at the civic center. He assisted plaintiff with taking the Genie lift off Premiere's trailer and did not recall anyone from Premiere or CSS Audio directing stagehands as to what equipment needed to be unloaded. Shortly before the accident, Wald "got the lift, [he] was pushing it to the ramp, and then it just happened to be [plaintiff] *** [who] was the next one up to help [him] get it out." Besides the lift, Wald testified he had no difficulty rolling any equipment off the ramp of Premiere's trailer. As he and plaintiff moved the lift down the ramp, "the leading wheels made the small drop to get to the concrete from the trailer, ramp, door, to the ground [and] *** there was no little piece of metal edging that made a ramp that would fold up onto the trailer that completed that ramp-to-ground transition." Wald stated, "[E]verything was fine with that lift until it came off *** the final inch dropoff *** of that trailer." He attempted to "put a foot on the bottom and pull it back so the front wheels come up," but he believed "physics took over because this thing [was] very top heavy coming down the ramp *** and then those front wheels, those leading wheels [were] now off the ramp two inches." According to Wald, the missing hinged piece caused the lift to fall on plaintiff.

¶ 17        In April 2022, plaintiff filed a response to defendants' summary judgment motions, asserting a genuine issue of material fact existed "as to the unreasonable and unsafe condition of [Premiere's] ramp to preclude summary judgment." Plaintiff argued, "the defect associated with the ramp was testified to by various witnesses," who, plaintiff claimed,

"confirmed that this ramp was not safe for transporting this *** lift." Thus, plaintiff argued, it became CSS Audio's duty to ensure the ramp was in safe condition "since the lifts in question belonged to CSS Audio, and CSS Audio along with Premiere *** instructed the [p]laintiff to unload the lift out of *** Premiere's trailer."

¶ 18 In May 2022, the circuit court conducted a hearing on defendants' motions for summary judgment and ultimately found Premiere's ramp was "[c]learly *** not the problem." There were "plenty of people testifying that the ramp was in normal shape; that it's not a defect to have a lip, *** and that's normal." The court noted the "three-quarter inch lip" and explained, "there is no ramp *** that's ever going to not have a lip. It's not like walking into the ocean, ever." Rather, "it's seamless coming out of the trailer until you get to the portion that's laying on the concrete." Moreover, the court determined the trailer "must have been good enough for everything else to be taken off" because "everybody involved unloaded that whole trailer except for the very last item." The court also found Wald's testimony insufficient to raise a genuine issue of material fact and stated, "I have seven people and just one that's hanging in there saying, no, that lip was too much. That piece either wasn't there or it was a much wider gap." While the court believed Wald "hedge[d] a lot when he [got] to that point," it stated, "I don't assign weight to any testimony. I don't. I'm not finding that [Wald] going back and forth creates any issue at all for me to disbelieve him." As no genuine issue of material fact existed in the case, the court granted summary judgment in favor of defendants.

¶ 19 This appeal followed.

¶ 20                                  II. ANALYSIS

¶ 21 On appeal, plaintiff challenges the circuit court's grant of summary judgment in defendants' favor. Specifically, plaintiff asserts the court erred in granting defendants' motions

- 9 -

for summary judgment because the evidence showed a genuine issue of material fact as to whether Premiere's ramp was in a reasonably safe condition to unload CSS Audio's Genie lift. Plaintiff also claims CSS Audio "had a duty to ensure that Premiere [p]rovide a safe ramp for unloading of the Genie [l]ift owned by CSS Audio."

¶ 22		Section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2020)) governs summary judgments, providing the circuit court must enter judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We recognize that "[s]ummary judgment is a drastic means of disposing of litigation and 'should be allowed only when the right of the moving party is clear and free from doubt.' " *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488 (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004)). " '[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.' " *Beaman*, 2019 IL 122654, ¶ 22 (quoting *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995)). "With a summary judgment motion, courts construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Smith v. Hancock*, 2019 IL App (4th) 180704, ¶ 19, 133 N.E.3d 666. A circuit court's ruling on a motion for summary judgment presents a question of law, and thus we apply the *de novo* standard of review. *Mayfield Cooper Brotze v. City of Carlinville*, 2021 IL App (4th) 200369, ¶ 27, 183 N.E.3d 251.

¶ 23		As a threshold matter, we note plaintiff's contention the circuit court made improper credibility determinations regarding deposition testimony in ruling on defendants'

motions for summary judgment. See *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (2008). Although plaintiff "correctly points out a trial court does not make credibility determinations or weigh evidence when ruling on a motion for summary judgment" (*Hollenbeck v. City of Tuscola*, 2017 IL App (4th) 160266, ¶ 34, 72 N.E.3d 880), she cites no authority holding reversal is necessary for such an error. "[A]s stated, our review on the grant of a motion for summary judgment is *de novo*, and 'thus we are examining the depositions and pleadings anew to determine whether a material question of fact exists.' " *Hollenbeck*, 2017 IL App (4th) 160266, ¶ 34 (quoting *Coole*, 384 Ill. App. 3d at 396). "As no deference is given to the trial court's ruling, and as we are analyzing the court's rulings on summary judgment anew, we need not address the merits of this particular issue." *Hollenbeck*, 2017 IL App (4th) 160266, ¶ 34 (citing *Coole*, 384 Ill. App. 3d at 396).

¶ 24        Based on this record, we agree with the circuit court that Premiere's ramp was "not the problem." The Genie lift plaintiff unloaded was the final piece of equipment to be removed from Premiere's trailer, and Wald testified he had no difficulty rolling any other equipment off its ramp. According to Reid, if the hinged extension "wasn't folded out, it would be folded up onto the ramp and it would be almost impossible to unload anything." Further, plaintiff, Reid, Chladny, Batton, and Evans all testified they observed no defects or dangerous conditions with Premiere's trailer. Following the accident, Chladny spoke with Wald, who "said that he had a hand on the top of [the lift] and he stumbled and it let go." Kenney also inspected Premiere's trailer during his follow-up investigation and "felt like the trailer and the ramp were in good condition." He noted an approximately three-quarter-inch drop from the leading edge of the ramp to the concrete and saw "no other way to position this trailer *** to not have that drop." In fact, Chladny testified, "the amount of *** smooth to the ground ramps *** is almost

nonexistent." He further stated Premiere's ramp was "a suitable ramp" for unloading Genie lifts, and Evans testified it was customary for stagehands to unload lifts from similarly configured ramps.

¶ 25    More importantly, the different version of the facts provided by Wald—such as his testimony that he observed no three-quarter-inch transition piece—do not alter our conclusion. His testimony is in direct conflict with that provided by plaintiff during her deposition. "[A] party's testimony at a discovery deposition may amount to a judicial admission, and 'the party making the admission is bound by that admission and cannot contradict it.' " *Hollenbeck*, 2017 IL App (4th) 160266, ¶ 50 (quoting *Eidson v. Audrey's CTL, Inc.*, 251 Ill. App. 3d 193, 195-96, 621 N.E.2d 921, 923 (1993)); see also *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 480, 508 N.E.2d 301, 303-04 (1987) (stating "a party cannot create a factual dispute by contradicting a previously made judicial admission"). Plaintiff herself specifically recalled Premiere's trailer being set up "how it's supposed to be," with its ramp "folded down[,] and then there was a little metal plate that folded down that touched the concrete." As the evidence fails to show the existence of a defect or dangerous condition with Premiere's ramp, plaintiff's attempt to create a genuine issue of material fact is nothing more than speculation. See *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20, 52 N.E.3d 319 (stating "unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact").

¶ 26    After reviewing the pleadings, the witnesses' depositions, and other exhibits and construing them strictly against the movant and liberally in favor of the opponent, we find the circuit court did not err by concluding there was no genuine issue of material fact as to the condition of Premiere's ramp. See *Beaman*, 2019 IL 122654, ¶ 22. Accordingly, we need not

address plaintiff's second argument that CSS Audio had a duty to ensure Premiere provide a safe ramp for unloading its lifts because there is no genuine issue of material fact that Premiere's ramp was in a reasonably safe condition. Thus, summary judgment in defendants' favor was proper.

¶ 27                                  III. CONCLUSION

¶ 28            For the foregoing reasons, we affirm the circuit court's judgment.

¶ 29            Affirmed.