NOTICE
Decision filed 01/19/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200136-U

NO. 5-20-0136

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| CORALYNN E. WHITE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 18-L-12 |
| | ) | |
| JOSEPH J. FITZPATRICK, AMBER | ) | |
| FITZPATRICK, THOMAS WUEST, | ) | |
| MARK BERNDSEN, and THE CITY OF | ) | |
| BREESE, ILLINOIS, | ) | Honorable |
| | ) | Kimberly G. Koester, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The plaintiff is correct that in her second amended complaint she has pled sufficient facts to state a claim of malicious prosecution against the Fitzpatricks and survive the defendants' section 2-615 motion to dismiss as to those counts. The plaintiff, however, is incorrect that she has pled sufficient facts to state a claim of malicious prosecution against the remaining defendants and the circuit court's dismissal of those counts was proper. Finally, the plaintiff failed to state a claim of abuse of process against the defendants because she has pled no facts which demonstrate the improper or illegal use of the court's proceedings. Therefore, we affirm in part and reverse in part the order of the circuit court of Clinton County and remand for further proceedings on the malicious prosecution counts alleged against Joseph and Amber Fitzpatrick.

¶ 2    The plaintiff, Coralynn E. White, appeals the circuit court of Clinton County's April 16, 2020, order dismissing all counts of her second amended complaint against the defendants. That

1

same order also found that there was no just reason to delay the enforcement or appeal of the dismissal order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Appellant's notice of appeal was filed on April 17, 2020. Thus, this court has appellate jurisdiction under Rule 304(a). For the following reasons, we affirm the dismissal of counts II, III, V, VII, VIII, and X alleged against the defendants Thomas Wuest, Mark Berndsen, and the City of Breese, Illinois, as well as counts VI and IX alleged against the defendants Joseph Fitzpatrick and Amber Fitzpatrick. We reverse the dismissal of counts I and IV alleged against Joseph Fitzpatrick and Amber Fitzpatrick and remand the case for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      This appeal arises from the circuit court's dismissal, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), of the plaintiff's second amended complaint, which alleged five counts of malicious prosecution (one count for each of the defendants) and five counts of abuse of process (also one count for each of the defendants).

¶ 5      The second amended complaint alleges that the defendant Joseph Fitzpatrick (Joseph) lied to the plaintiff Coralynn E. White (Coralynn) about not having a car seat available in order to induce her to come to his home to pick up their minor child, G.F. Following Coralynn's arrival, Joseph allegedly invited Coralynn inside, then self-inflicted cuts to his person and falsely charged Coralynn with attacking him and stabbing him with a knife. As a result, Coralynn was arrested and charged with felony battery and aggravated domestic battery. The complaint alleges this incident was set up to bolster Joseph's position in a contentious parenting time dispute and to allow him to gain full custody of G.F. Following Coralynn's arrest, Joseph obtained an order of protection against Coralynn and filed a petition to modify parenting time for G.F. The circuit judge in the family case granted Joseph's request and modified the terms of the parties' parenting time order, changing primary custody from Coralynn to Joseph. Eighteen months later, following Coralynn's

acquittal of the criminal charges previously mentioned, the parenting time order was revised back to its original arrangement, granting Coralynn primary custody of G.F. The complaint then alleges that the defendants Amber Fitzpatrick (Amber), Officer Thomas Wuest (Wuest), and Officer Mark Berndsen (Berndsen) assisted and acted in concert with Joseph in filing and prosecuting the criminal charges against Coralynn for the same purposes.

¶ 6     Before we further analyze the details alleged in the complaint at issue, we first discuss procedurally how this case has come before us.

¶ 7     The criminal case for felony battery and aggravated battery against Coralynn was tried, resulting in a jury verdict of not guilty on all counts, on October 13, 2016. After Coralynn was acquitted at her criminal trial, she initially filed a complaint against all the defendants, in the United States District Court for the Southern District of Illinois, alleging violations of her civil rights under 42 U.S.C. § 1983 (1996), with additional Illinois state law claims for false arrest, malicious prosecution, and abuse of process. The district court granted summary judgment for the defendants on the federal civil rights claims raised by Coralynn, finding that probable cause existed at the time of her arrest. The district court went on to dismiss the state law claim for false arrest as well because of its finding of the existence of probable cause. However, the district court dismissed the state law claims for malicious prosecution and abuse of process against the defendants, without prejudice, on the basis of lack of jurisdiction, declining to exercise its discretionary supplemental jurisdiction over those state law claims, stating:

        "The [district court] has considered the relevant factors and declines to exercise
        supplemental jurisdiction over Counts IV, VI, VII, and IX in this case. The [district court]
        firmly believes that Illinois state courts are far better equipped to hear cases that turn on
        the interpretation and application of state law between citizens of Illinois. As a matter of
        comity and efficiency, the privilege of hearing such cases should rest with the state court

3

system. *** For these reasons, the [district court] declines to exercise jurisdiction over the remaining claims in this case and will dismiss those claims without prejudice for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c)(3)."

¶ 8 Following the partial grant of summary judgment by the district court, Coralynn appealed to the United States Court of Appeals for the Seventh Circuit, which affirmed the district court's rulings on November 26, 2018.

¶ 9 During the appeal of her federal claims, Coralynn filed the current matter in Clinton County, Illinois, alleging malicious prosecution and abuse of process as discussed previously. Following the filing of her first amended complaint, the defendants Wuest, Berndsen, and City of Breese filed a motion to dismiss on June 14, 2018. This motion was made pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) and argued that the first amended complaint was deficient as a matter of law because Coralynn could not plead all the "necessary elements of these two theories."

¶ 10 The memorandum of law which accompanied the defendants' motion to dismiss alleges various deficiencies in Coralynn's first amended complaint. Regarding the charge of malicious prosecution, the defendants specifically argue that "police cannot be held liable for their role in simply turning this matter over to the State's Attorney"; that Coralynn only pled "[c]onclusory allegations of malice" in her complaint and that this "fail[ed] to satisfy Illinois pleading requirements"; and that the "existence of probable cause is an absolute defense to a claim of malicious prosecution" which bars Coralynn "from collaterally relitigating [the probable cause determination] given the rulings of this Court as well as the United States District Court finding that probable cause existed for the arrest."

¶ 11 Then the defendants addressed the charge of abuse of process. Regarding that allegation, the defendants argued that Coralynn failed to "plead facts that the defendant[s] instituted

4

proceedings against [her] for an improper purpose, such as extortion, intimidation, or embarrassment." The defendants also argued that there are no facts pled which support a "claim for abuse of process because there is no act in the use of the legal process that was not proper in the regular prosecution of the proceedings," pointing to the fact that "the mere institution of proceedings does not in and of itself constitute abuse of process."

¶ 12    Coralynn filed a responsive motion to the defendant officers' motion to dismiss. Joseph and Amber Fitzpatrick, however, did not file any motions in response to the motion to dismiss; instead, they filed an answer to the first amended complaint.

¶ 13    On September 17, 2018, after reviewing pleadings on the motion to dismiss from both parties and hearing argument, the circuit court granted the defendants' (Wuest, Berndsen, and City of Breese) section 2-615 motion to dismiss without prejudice.

¶ 14    Following some initial confusion regarding the circuit court's order, and arguments on Coralynn's motion for leave to file a second amended complaint, the circuit court partially granted Coralynn's request for leave to file a second amended complaint on December 13, 2018.

¶ 15    On December 19, 2018, the defendants Wuest, Berndsen, and City of Breese filed a motion to dismiss the second amended complaint, with memorandum in support, arguing again that the federal judgment precluded Coralynn's claims and that the second amended complaint failed to cure the initial complaint's defects and properly allege facts establishing a cause of action for malicious prosecution and abuse of process. Notably, the defendants did not identify which statute pursuant to which they were filing their motions to dismiss. Additionally, the defendants in their motion included reference to the United States Seventh Circuit Court of Appeals' affirmation of the district court's decision in the federal court.

¶ 16    The defendant officers in their memorandum in support of their motion to dismiss second amended complaint stated, "the defendants hereby adopt and incorporate the Memorandum and

5

Motion filed in support of their original Motion to Dismiss." The defendants then went on to briefly discuss some of the factual allegations Coralynn specifically added to the second amended complaint in order to attempt to cure the defects of her initial complaint.

¶ 17     Defendants Joseph and Amber Fitzpatrick filed their own motion to dismiss joining the other defendants and adopting the officers' motion on January 7, 2019.

¶ 18     Coralynn filed her response to the defendants' motions to dismiss on January 22, 2019. This response focused on the issues of *res judicata* and collateral estoppel. Coralynn argued that her claims were not barred because the federal court specifically reserved its judgment on those claims so that she could bring them before the state court. Further, she argued that the claims of malicious prosecution and abuse of process required an analysis of probable cause in relation to a different period of time, specifically the time at the filing of the criminal charges and the prosecution thereafter, as opposed to at the time of arrest. Thus, whether probable cause was found to be present at the time of the arrest, as determined by the federal court, was not binding on her claims of malicious prosecution and abuse of process.

¶ 19     On February 11, 2019, Coralynn supplemented her response to the defendants' motion to dismiss with citation to *Beaman v. Freesmeyer*, 2019 IL 122654. The defendants then filed a reply to the supplement arguing that probable cause for the malicious prosecution claims was already decided by the federal courts, which ruled there was probable cause to make the arrest.

¶ 20     The motions to dismiss were argued on July 17, 2018, and February 27, 2019. On March 13, 2019, the circuit court entered an order dismissing the malicious prosecution counts (counts I through V) pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), ruling that the second amended complaint failed to adequately allege all of the elements of malicious prosecution, specifically the element of malice. In the same order, the circuit court also dismissed the abuse of process counts (counts IV through X), stating that the second amended complaint failed to

6

adequately allege all of the elements of abuse of process. In the same order, the circuit court granted Coralynn "21 days to further respond."

¶ 21    Coralynn filed an amended notice of appeal on May 14, 2019. Our court dismissed that appeal on January 27, 2020, finding that, although an Illinois Supreme Court Rule 304(a) order had been entered by the circuit court indicating there was no just reason for delay of an appeal, the underlying order of March 13, 2019, was not a final judgment because it granted Coralynn leave to further amend her complaint by giving her "21 days to further respond" which deprived us of jurisdiction. *White v. Fitzpatrick*, No. 5-19-0153, ¶ 5 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 22    After the case returned to the circuit court, the judge entered an order on April 16, 2020, adopting and reaffirming her findings in the March 13, 2019, order and amending the order to provide that all 10 counts of the second amended complaint were dismissed with prejudice for the reasons stated in that order, and further stating that there was no just reason for delaying either enforcement or appeal or both, pursuant to Illinois Supreme Court Rule 304(a). Coralynn then filed a new notice of appeal on April 17, 2020, which again brought this case before us.

¶ 23    Now that we have reviewed the procedural history, we turn to the factual allegations at issue in this matter. The circuit court dismissed the complaint pursuant to section 2-615 of the Code, which requires that in our review we only look to the complaint at issue and take all well-pled facts as true. The following are the facts underlying this case as alleged by Coralynn in her second amended complaint. Due to the complaint's length, we have summarized Coralynn's allegations instead of quoting them verbatim. We reference specific portions in our analysis as necessary.

¶ 24    Coralynn and Joseph have never been married, but they have one child, G.F., together. G.F. was born in 2009. Coralynn and Joseph ended their relationship in February 2010.

7

¶ 25     Joseph and Amber married in May 2010 and have one child together. Amber has three children by previous marriages and/or relationships. Coralynn is not married.

¶ 26     A family case was filed regarding parental responsibilities and parenting time for G.F. in Christian County, Illinois (case No. 10-F-30). During 2010, pursuant to stipulation, the Christian County court awarded the majority of parental responsibilities and parenting time to Coralynn and provided Joseph with visitation and temporary parental responsibilities.

¶ 27     In late December 2014, Joseph obtained a temporary restraining order (TRO) against Coralynn and gained temporary custody of G.F. for a period of two days. Coralynn then obtained an order setting aside the TRO on January 2, 2015. Later that month, Coralynn filed a motion to correct and increase the amount of child support Joseph was required to pay. In February 2015, Joseph responded by filing a motion requesting primary custody of G.F. The circuit court scheduled a status hearing on the matter for June 4, 2015.

¶ 28     On Sunday, June 7, 2015, G.F. had been visiting with Joseph for the weekend. Joseph was required to return G.F. to Coralynn in Greenville, Illinois, where she would be returning from a camping trip in Missouri. On that day, Joseph texted Coralynn informing her that Amber had left, that he did not have a car seat to use in returning G.F., and that she would have to pick up G.F. at his home in Breese, Illinois. He later admitted that he had lied to Coralynn in this text message in order to induce her to come to his home that evening.

¶ 29     Joseph is approximately six feet one inch tall and is muscular. He exercises regularly, practices mixed marital arts, and is a member of the United States Army. Coralynn is approximately five feet three inches tall and weighs 120 pounds.

¶ 30     The evening of June 7, 2015, Coralynn arrived at Joseph's home. She went into the home to retrieve G.F. Upon her entry, Joseph struck Coralynn in the side of her head, knocking her to the ground and injuring her eardrum. Joseph then restrained Coralynn on the floor and held her

8

there until Officer Wuest arrived. Joseph was also aided by his neighbor who came over and helped restrain Coralynn.

¶ 31    While Joseph was pinning Coralynn on the ground, he began screaming that she had cut him with a razor and cursing at her. Blood dripped on Coralynn's face from Joseph's self-inflicted wounds, but Coralynn never witnessed Joseph cut himself either before or after she was attacked. She also did not notice any wounds prior to the attack.

¶ 32    Coralynn denies stabbing or cutting Joseph. She denies having possession of, or any knowledge of, a knife. Joseph said nothing about a knife while Coralynn was in the home. Coralynn knew she was being framed once Joseph began accusing her of cutting him.

¶ 33    Coralynn told Officer Berndsen that she never touched the knife they recovered and that her fingerprints would not be on it. She also told him Joseph's wounds were self-inflicted. Additionally, no razor or other weapon was recovered by the investigating officers, nor was any weapon discovered on Coralynn's person. Coralynn's clothing was taken into evidence, and she alleges she never had an opportunity to dispose of a weapon during the altercation or investigation.

¶ 34    Officers Wuest and Berndsen responded to the emergency call. Upon their arrival, Coralynn was handcuffed and taken outside of the home. During this time, Joseph and his neighbor were left alone inside the home for a period of approximately two minutes. The officers did not take Joseph's clothing into evidence despite it have some blood on it, nor did they search him. Officer Berndsen was "shocked" that there was no blood on the knife they recovered. The knife was tested for fingerprints and blood, but none were present. Despite it later being determined that no blood or fingerprint evidence was on the knife, the parties still continued to prosecute the criminal case against Coralynn and ultimately brought the case to trial.

¶ 35    Joseph had two superficial wounds, one in the upper chest area, near the neck but below the collar line of his t-shirt. The other wound was on his left forearm. Coralynn alleged that the

9

officers failed to follow proper investigating techniques and training when handling the incident. She alleged they "violated good police practices" in various ways.

¶ 36    Officer Berndsen recommended that Joseph file for an order of protection against Coralynn, stating that it would help in the child custody dispute, and gave him instruction on how to obtain an order of protection. Coralynn offered to take a lie detector test, but the officers declined to do so that evening, stating they might do one "down the road."

¶ 37    Amber was at the home during the altercation. She never saw the knife and never saw Coralynn holding or attempting to conceal a knife. Also, Amber had previously worked at the Clinton County sheriff's office for six years. She knew Officer Berndsen from that employment.

¶ 38    Joseph has a history of violence against women. He was previously charged with domestic battery by Amber. He also had previously threatened Coralynn with a gun and had battered her. Officers Wuest and Berndsen were aware of this history and were also aware that Joseph was unhappy with the current parental responsibly and parenting time allocation that was in place.

¶ 39    On June 8, 2015, Joseph filed for an emergency order of protection seeking to change the terms of the child custody order. In July 2015, the circuit court in the family case granted Joseph's petition to modify providing him primary custody. Coralynn was given visitation rights on the weekends. In August 2015, Joseph filed a petition to modify the child custody order permanently so that he would have primary custody, claiming that Coralynn attacked him with a knife while G.F. was present. Further, Joseph and Amber communicated to Officers Wuest and Berndsen, as well as the state's attorney, that they wanted criminal charges against Coralynn to be prosecuted.

¶ 40    The criminal case for felony battery and aggravated domestic battery against Coralynn was tried on October 13, 2016, resulting in a jury verdict of not guilty on all counts. Joseph, Amber, Wuest, and Berndsen all testified in the criminal case and child custody case. The child custody

case was tried in November and December 2016, resulting in a determination by the circuit court that Joseph did not prove, by a preponderance of the evidence, that Coralynn stabbed him.

¶ 41    In December 2016, the circuit court entered an order restoring primary parental responsibilities and parenting time to Coralynn and permitting Joseph visitation on alternating weekends and holidays. As a result of the charges against Coralynn, the child custody case, and order of protection, Coralynn lost primary custody of G.F. for a period of 18 months.

¶ 42    Coralynn alleges that probable cause did not exist for charging and prosecuting her on the criminal charges. The facts did not support a determination of probable cause to prosecute the three counts of felony battery and one count of aggravated domestic battery against her. The Fitzpatricks knew that Joseph's wounds were self-inflicted and that they falsely reported the facts to Officers Wuest and Berndsen for the purpose of falsely inducing them to file and prosecute the criminal charges.

¶ 43    Coralynn finished her "general allegations" by stating that the parties acted in concert to initiate and prosecute the criminal charges against her.

¶ 44    After going through the "general allegations," Coralynn then makes allegations specific to each claim against each of the defendants. To the extent the allegations contained within each separate count are relevant, they will be quoted below. We now turn to our analysis of the issues raised by Coralynn.

¶ 45                                      II. ANALYSIS

¶ 46    The issues brought before us by Coralynn are as follows: (1) whether counts I through V properly state causes of action against the defendants for malicious prosecution; (2) whether counts VI through X properly state causes of action against the defendants for abuse of process; and (3) whether the second amended complaint is barred by the doctrines of *res judicata* or collateral

11

estoppel because of the probable cause determination made by the district court when partially granting the defendants' summary judgment motion in that case.

¶ 47                    A. *Res Judicata* and Collateral Estoppel

¶ 48    We begin our analysis by looking at the issues of *res judicata* or collateral estoppel because, if applicable, they would bar Coralynn from litigating the issues before us and would render further analysis moot. In order to address this issue, we must again review proper pretrial motion practice within the courts of the State of Illinois.

> "Meticulous practice requires an attorney to specify whether his motion to dismiss is brought under Code section 2-615 or 2-619. [Citation.] A section 2-615 motion attacks only a complaint's legal sufficiency; its purpose is not to raise affirmative factual defenses, but to allege defects apparent on the face of the pleadings. [Citation.] Conversely, the primary basis for a section 2-619 motion is to alert the court to affirmative matter that defeats the claim or operates to avoid its legal effect. [Citations.] Because collateral estoppel operates to bar a legally recognized claim, it is properly asserted in a motion under section 2-619. [Citations.]" *Sarno v. Akkeron*, 292 Ill. App. 3d 80, 84 (1997).

¶ 49    In the present matter, the defendants did not specify whether their motions to dismiss were filed pursuant to section 2-615 or 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2018)). The circuit court ultimately concluded in its order that the motions had been filed pursuant to section 2-615. We agree with the circuit court's determination that the defendants' motions should be construed as section 2-615 motions to dismiss. We reach this conclusion for the following reasons.

¶ 50    First, the central argument that the defendants make in their motions to dismiss is that Coralynn has failed to state a claim because she has failed to allege facts which fulfill all of the necessary requirements of either malicious prosecution or abuse of process. This is the exact type of argument contemplated under section 2-615 of the Code and properly brought in a section 2-

615 motion to dismiss. Secondly, the defendants incorporated the defendant officers' previously filed motion to dismiss relating to Coralynn's first amended complaint into their new motion to dismiss relating to Coralynn's second amended complaint. In the previously filed motion to dismiss, the defendants did explicitly state that the motion was being brought pursuant to section 2-615. Thus, based upon the arguments put forth by the defendants in their motions and through the incorporation of the previous motion, it appears that the defendants intended for their motions to dismiss the second amended complaint to be brought pursuant to section 2-615.

¶ 51　　However, in conjunction with the arguments noted above, the defendants also reference and incorporate the federal court decision and its finding that probable cause existed at the time of arrest as a matter of law. They incorporate a copy of that ruling in their motion by reference. They then argue that the federal court ruling is binding on the issue of proximate cause in the state law claims before us and preclude Coralynn from bringing her action, and by alleging such, thus raise the issues of *res judicata* and collateral estoppel. Because the defendants have included this argument in what we determine to be a section 2-615 motion to dismiss, these issues of *res judicata* and collateral estoppel have not properly been raised. They should generally be brought in a section 2-619 motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). We do acknowledge that Illinois courts have held that "where an affirmative defense is apparent from the face of the complaint, it is a proper subject for a section 2-615 motion." *Sarno*, 292 Ill. App. 3d at 84. Thus, where a plaintiff's complaint incorporates or references a prior judgment in his or her pleadings, that issue may properly be raised. That, however, is not what occurred here, where instead the defendants have incorporated the prior judgment in order to raise it as an affirmative defense.

¶ 52　　Illinois law does allow for the combined filing of certain motions.

13

"Motions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619, and motions for summary judgment under Section 2-1005 may be filed together as a single motion in any combination. A combined motion, however, *shall be in parts. Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005. Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based.*" (Emphasis added.) 735 ILCS 5/2-619.1 (West 2018).

We reiterate that "section 2-619.1 was the legislature's response to the fact that '[r]eviewing courts have long disapproved of [the] slipshod practice' of filing hybrid motions to dismiss pursuant to both sections 2-615 and 2-619, because those motions 'cause[ ] unnecessary complication and confusion.' " *Higgins v. Richards*, 401 Ill. App. 3d 1120, 1125 (2010) (quoting *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994)). So, to the extent that the defendants were attempting to file a combined motion to dismiss, they have failed to do so properly.

¶ 53    While the issues of *res judicata* and collateral estoppel have not been raised properly and this court strongly discourages the type of "causal" pleading demonstrated by the defendants in this matter, Coralynn has not alleged any prejudice as a result of the improper pleading, nor did she take any action while in the circuit court to address this defect. Instead, she fully responded to the arguments set forth by the defendants and even incorporated the district court decision into her response. Thus, in the interest of judicial economy, we will address the merits of the defendants' argument as to whether Coralynn's claims are barred by the district court's rulings.

¶ 54    "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving *the same claim, demand or cause of action*." (Emphasis added.) *Nowak v. St. Rita High School*, 197 Ill. 2d 381,

14

389 (2001). This is sometimes referred to as claim preclusion. "The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and *some controlling fact or question* material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." (Emphasis added.) *Id.* at 389-90. This is sometimes referred to as issue preclusion.

¶ 55    In this case, *res judicata* is not applicable because the federal district court specifically declined to exercise supplemental jurisdiction as to the state claims before us and dismissed them without prejudice so they could be brought in a state court. The Illinois Supreme Court in *Nowak v. St. Rita High School* addressed this exact issue:

"The facts of the instant case place it squarely within the exceptions to the application of *res judicata* as set forth in the Restatement (Second) of Judgments § 26(1) (1982), and in *Airtite*, both of which were cited by this court in *River Park*. By declining jurisdiction over the plaintiff's pendent state claim, dismissing it for lack of jurisdiction, the district court in effect reserved plaintiff's right to pursue the matter in state court. The doctrine of *res judicata* need not be applied in a manner inconsistent with fundamental fairness. [Citation.] The doctrine does not apply in this case." *Id.* at 393-94.

¶ 56    Therefore, because the "claims" of malicious prosecution and abuse of process were not directly ruled on by the district court, *res judicata* does not apply.

¶ 57    "Collateral estoppel (or issue preclusion) is an equitable doctrine that, like the law of the case doctrine, prevents a party from relitigating an issue that has been decided in a prior proceeding." *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 114. "Collateral estoppel applies when: (1) the issue decided in the prior adjudication is identical to the issue in the present suit;

15

(2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Id.*

¶ 58    The parties do not dispute that a final judgment was made, nor that all of the parties involved in this case were also privy to the federal case. The only point of contention is whether the proximate cause determination made by the district court in ruling on the false arrest claim is identical to the one that must be made by the state court relating to the malicious prosecution and abuse of process claims.

¶ 59    The district court found that probable cause existed at the time of Coralynn's arrest in order to take her into custody. This resolved the section 1983 federal claims. The district court then applied that finding to the state law false arrest claim and, as a result, also dismissed it. However, the court stopped there, declining to rule on the remaining state law claims, stating: "Like the Section 1983 claims, White's state law false arrest claims turn on whether the officers had probable cause to arrest her. *** The malicious prosecution and abuse of process claims present a different scenario."

¶ 60    While the district court's statement that the malicious prosecution and abuse of process claims present a "different scenario" is by no means determinative, or necessarily instructive to the issue at hand, we do believe that if the district court believed that its proximate cause determination was controlling over those claims, it could have easily extended that determination to those claims and dismissed them in the same way it chose to handle the false arrest claim.

¶ 61    In any event, we find that the district court's determination that probable cause existed in order to arrest Coralynn is not *identical* to the determination that probable cause existed to support her prosecution. The differences are outlined in *Gauger v. Hendle*:

"[W]e note that, in assessing probable cause to *arrest*, the existence of probable cause depends on the totality of the circumstances at the time of the arrest. [Citation.] The determination is based on facts known to the police at the time of the arrest. [Citations.] The existence of probable cause in a malicious-prosecution action is 'determined by

16

looking to what the defendants knew at the time of subscribing a criminal complaint' and not at the (earlier) time of arrest. [Citation.] In a malicious-prosecution case, probable cause is defined as '*a state of facts* that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.' (Emphasis added.) [Citation.] 'It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused.' [Citation.]" (Emphases added.) *Id.* ¶ 112.

¶ 62    Thus, because the issue is not identical, collateral estoppel does not bar Coralynn's ability to bring her malicious prosecution and abuse of process claims in this court.[1]

¶ 63                              B. Standard of Review

¶ 64    Next, we turn our attention to the dismissals granted by the circuit court. In doing so, we must review them under the standards imposed for dismissals granted pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). "A motion to dismiss filed pursuant to section 2-615 of the Code [citation] attacks the legal sufficiency of a complaint; its purpose is to raise defects apparent on the face of the pleadings." *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543,

---

[1]Additionally, the defendants argue that under Illinois law "barring intervening events, a finding that there was probable cause to arrest a plaintiff is also sufficient to satisfy the probable cause requirement for instituting criminal proceedings against the plaintiff." To support this proposition, the defendants cite to *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 80 (2003), and *Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 802 (2006) (which cites to *Johnson*).

The *Johnson* case dealt with the review of a judgment *n.o.v.* While the court in *Johnson* did articulate the rule of law stated by the defendants, the defendants unfortunately misconstrue the holding as it applies to this matter. We reference the defendants' words in their brief to help further explain: "citing *Johnson*, the [c]ourt noted that although the probable cause standard for an arrest differs from the probable cause standard in a criminal proceeding, they are, for all purposes, equal." The focus of a collateral estoppel determination is whether the issue previously decided by the court is the same issue as a determinative one in the present court. Here, as noted in the defendants' summary of the *Johnson* and *Ross* cases, the "standard for an arrest *differs* from the probable cause standard in a criminal proceeding." (Emphasis added.) While the *Johnson* and *Ross* courts find that the standards may be "equal," in that they place the same amount of burden or require equal amounts of evidence, the standards are different in the time period for which they occur and their focus or scope of evidence that can be considered, and thus are not *identical*.

17

¶ 14. "The standard of review for a section 2-615 motion to dismiss is whether the complaint sufficiently states a cause of action, and the merits of the case are not considered." *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9 (1997). "Illinois is a fact-pleading [s]tate." *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 985 (1994). "In order to state a cause of action, a complaint must set forth a legally recognized cause of action and plead facts bringing the claim within that cause of action." *Id.* "Dismissal of the complaint is mandatory if one fails to meet both requirements." *Id.* "When the legal sufficiency of a complaint is challenged by a motion to dismiss, [the court] must assume the truth of all facts properly pleaded; however, the court must ignore conclusions of law and fact not supported by allegations of the specific facts upon which such conclusions rest." *Id.* at 985-86. "The complaint must be construed liberally and should only be dismissed when it appears that the plaintiff cannot recover under any set of facts." *Hartmann Realtors*, 2014 IL App (5th) 130543, ¶ 14. "Our standard of review is *de novo*." *Id.*

¶ 65                          C. Malicious Prosecution

¶ 66     The first of Coralynn's claims we will analyze is her malicious prosecution claim. "The essential elements of the action of malicious prosecution are (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff." *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 934 (1980). "The absence of any of these elements bars a plaintiff's malicious prosecution claim." *Beaman*, 2019 IL 122654, ¶ 26. "This court has long recognized that 'suits for malicious prosecution are not favored in law.' " *Id*. ¶ 24 (quoting *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 44 (1980)).

¶ 67     " 'Liability thus depends on whether the defendant was actively instrumental in causing the prosecution, and the presumption of prosecutorial independence can be overcome by showing

18

that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution.' " *Id.* ¶ 44 (quoting 52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018)). "Illinois courts have adhered consistently to this standard, holding that liability for malicious prosecution 'extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present.' " *Id.* ¶ 43 (citing 54 C.J.S. *Malicious Prosecution* §§ 18, 19 (1987)). "[A] person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors." *Id.*

¶ 68    While all the defendants are charged with the same claims, they are not all factually equally situated. First, we focus our attention on Officer Wuest, Officer Berndsen, and the City of Breese (which was included via an agency theory) (the Officers).

¶ 69    The circuit court when dismissing the counts of malicious prosecution alleged against the Officers specifically held that Coralynn failed to properly allege malice on the part of the Officers as required as a part of a malicious prosecution claim. We agree.

¶ 70    Coralynn alleges numerous facts regarding the Officers in her second amended complaint. The overwhelming majority of these facts are related to how the Officers investigated the incident between her and Joseph. While the issues of whether or not the Officers properly investigated the crime or protected and collected evidence may have been relevant to the federal court claims, they are not relevant to her malicious prosecution claims. Whether or not the Officers followed protocol in their investigation prior to her arrest has little bearing on a malicious prosecution charge. The failure of the Officers to collect Joseph's t-shirt as evidence or to stay with Joseph the entire time during the investigation does not demonstrate malice on their part. Further, the fact that one of the Officers knew Amber from her time as an employee of the Clinton County Sheriff's Department

does not demonstrate malice. The only allegations from her entire second amended complaint which suggests malice on the part of any of the Officers are the two conclusory statements that "Officer Wuest maliciously prosecuted the criminal case against Coralynn, without reasonable cause to believe that Coralynn committed the criminal offenses charged" and "Officer Berndsen maliciously prosecuted the criminal case against Coralynn, without reasonable cause to believe that Coralynn committed the criminal offenses charged." This is not a fact, but a conclusion, and without facts to support it, the malice element required for a malicious prosecution charge is not fulfilled.

¶ 71    Coralynn also alleges that the Officers knew of Joseph's past which included domestic violence incidents involving Coralynn and Amber, which would seem to contraindicate that they would be predisposed to believing him over Coralynn in a domestic violence altercation. Finally, Officer Berndsen's recommendation that Joseph file an order of protection following the incident is not an indication of malice in prosecuting criminal charges against Coralynn. It is not uncommon for police officers to advise individuals following domestic violence altercations of their ability to receive orders of protection.

¶ 72    Therefore, because we find that Coralynn failed to allege facts supporting a finding of malice on the part of the Officers, we affirm the circuit court's dismissal of counts II, III, and V.

¶ 73    We now turn to whether Coralynn's malicious prosecution claims against Joseph and Amber were properly dismissed.

¶ 74    The circuit court again dismissed the malicious prosecution counts against these two based upon Coralynn's failure to allege facts to support all of the claim's required elements and, specifically, noted a lack of the element of malice.

¶ 75    We disagree with circuit court's finding that all of the elements of malicious prosecution were not met as it relates to the defendants Joseph and Amber Fitzpatrick.

20

¶ 76    As previously stated, " '[l]iability *** depends on whether the defendant was actively instrumental in causing the prosecution, and the presumption of prosecutorial independence can be overcome by showing that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution.' " *Beaman*, 2019 IL 122654, ¶ 44 (quoting 52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018)).

¶ 77    Keeping in mind that in reviewing a dismissal pursuant to section 2-615 of the Code we must accept all well-pled facts as true, Coralynn has fulfilled her burden for pleading her claims against Joseph and Amber. Coralynn specifically states, "[t]he Fitzpatricks knew that Joseph Fitzpatrick's wounds were self-inflicted and that they falsely reported the facts to Officer Wuest and Berndsen for the purpose of falsely inducing them to file and prosecute the criminal charges." She goes on to allege various factual occurrences which, if true, demonstrate an intention by Joseph and Amber to falsely accuse Coralynn in order to gain leverage in a parenting time dispute that was ongoing at the time. These facts, if true, clearly demonstrate malice. Further, they demonstrate Joseph and Amber played a significant role in her prosecution by giving false testimony and information, encouraging the State to bring charges against Coralynn, and filing an order of protection against her supported by false information. Obviously, if what Coralynn states in her second amended complaint is true, the Fitzpatricks would have lacked probable cause to pursue the charges against her. And finally, the fact that Joseph Fitzpatrick initially lied to Coralynn in order to get her to his home on that evening is a significant factor that, once again, if true, demonstrates malice.

¶ 78    Thus, the dismissal of counts I and IV are reversed and we remand for further proceedings.

¶ 79                                    D. Abuse of Process

¶ 80    In reviewing the abuse of process claims made by Coralynn, our standard of review remains

the same. The claim against the defendants by Coralynn is that the "[d]efendant [Joseph], acting

in concert with [the d]efendants, Wuest, Berndsen and Amber, abused process by filing and

prosecuting the criminal charges against Coralynn for the ulterior purpose of transferring primary

custody of G.F. from Coralynn to [Joseph]."

> "Abuse of process is defined as the misuse of legal process to accomplish some purpose
> outside the scope of the process itself. [Citation.] The *only* elements necessary to plead a
> cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive
> and (2) some act in the use of legal process not proper in the regular prosecution of the
> proceedings. [Citation.] In order to satisfy the first element, a plaintiff must plead facts that
> show that the defendant instituted proceedings against him for an improper purpose, such
> as extortion, intimidation, or embarrassment. In order to satisfy the second element, the
> plaintiff must show that the process was used to accomplish some result that is beyond the
> purview of the process. [Citation.] The elements are strictly construed, as the tort of abuse
> of process is not favored under Illinois law." (Emphasis in original.) *Kumar v. Bornstein*,
> 354 Ill. App. 3d 159, 165-66 (2004).

¶ 81    The circuit court dismissed Coralynn's abuse of process claims against the defendants

because she failed to allege facts which could support the necessary elements of the claim. For the

following reasons we affirm the circuit court's dismissal.

¶ 82    As noted above, there are two elements for an abuse of process claim. While we believe it

is likely that Coralynn has pled sufficient facts as to the ulterior motive element as it pertains to

Joseph and Amber, we withhold our analysis of that element at this time and, instead, focus on the

second element of abuse of process, as we find it determinative to the claims against all defendants.

22

¶ 83     "The test for sufficiency of the allegations pertaining to the second element is whether process has been used to accomplish some result which is beyond the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 816 (1983). "Process" is defined as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." *Id.* "The mere filing of a lawsuit, *even with a malicious motive*, does not constitute an abuse of process." (Emphasis added.) *Kurek v. Kavanagh, Scully, Sudow, White & Frederick*, 50 Ill. App. 3d 1033, 1038 (1977), *abrogated by Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267 (1997).

¶ 84     "Malicious prosecution and abuse of the process are two separate torts although they are often thought to be the same. Some courts have stated that malicious use of process and malicious prosecution are the same remedy." *Id.* at 1037. "While that is correct, we believe that it has le[ ]d to confusion because many practitioners think that the words use and abuse are synonyms." *Id.* "[A]buse of process lies for the improper use of process *after* it has been issued, not for maliciously causing process to be issued." (Emphasis in original.) *Kumar*, 354 Ill. App. 3d at 168.

¶ 85     We find that Coralynn's second amended complaint lacks any proper allegations which show that any of the defendants did an act in the use of legal process, after process was issued, which was not proper in the regular prosecution of proceedings. There are no allegations of extortion, intimidation, or embarrassment by any of the defendants following the filing of the criminal charges. No promises to drop the criminal charges or not cooperate with the State's prosecution, if Coralynn would relinquish rights to G.F., or anything of that nature. Instead, the only allegations relating to these claims are that the Fitzpatricks, in concert with the Officers, had the criminal charges filed in order to gain leverage in the child custody case and then used those charges when arguing for a modification of the parenting time agreement for G.F.

23

¶ 86    As noted previously, the mere filing of a lawsuit or pleadings against an individual, even with bad intention, is not sufficient to support a claim of abuse of process. See *Community National Bank v. McCrery*, 156 Ill. App. 3d 580, 583 (1987); *Kumar*, 354 Ill. App. 3d at 168. The malicious *use* of process is equivalent to the claim of malicious prosecution. The *abuse* of process requires that the accused party or parties use the court's process in an improper or illegal way to achieve an end outside of the normal legal proceedings. Following the filing of Coralynn's criminal charges, the only allegation pertaining to the use of the court or its process alleged in the second amended complaint is that Joseph used those criminal charges while seeking to modify the parenting time agreement. That is not an abuse of process but is merely a use of process which is allowed for and contemplated under Illinois law. There are no other allegations against the remaining defendants which suggest improper use of the court's process or an attempt to use that process to achieve an end outside of the normal legal proceedings. The allegations expressed by Coralynn throughout her second amended complaint are focused on the *filing* of the criminal charges. That is not sufficient.

¶ 87    The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183 (2003). What Coralynn is actually arguing is that the malicious filing of a lawsuit can constitute abuse of process if it is filed for the purpose of gaining leverage or an advantage in another lawsuit. To find that to be true, is to ask this court to expand the reach of an abuse of process claim and apply it to situations where alleged malicious filings of claims are used in other legal proceedings legitimately as prescribed by law. Coralynn does not cite to any Illinois case law where abuse of process has been construed in this manner. Instead, she argues cases from other jurisdictions which she believes to be persuasive. We are not persuaded, and we decline to expand the doctrine of abuse

24

of process under Illinois law. The parties have a remedy for such a malicious filing. It is malicious prosecution which is also alleged in this action and which we have previously discussed.

¶ 88    As a result of Coralynn's failure to allege facts demonstrating the second element required of an abuse of process claim against any of the defendants, we hereby affirm the dismissal of the circuit court as to counts VI, VII, VIII, IX, and X.

¶ 89                                   III. CONCLUSION

¶ 90    For the foregoing reasons, we affirm in part and reverse in part the April 16, 2020, order of the circuit court of Clinton County and remand for further proceedings as to counts I and IV of the plaintiff's second amended complaint.

¶ 91    Affirmed in part and reversed in part; cause remanded.