2021 IL App (1st) 200412-U

No. 1-20-0412

Order filed June 30, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GLENN EVANS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 8648 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | Honorable |
| MARTRICE CAMPBELL, an individual, SHARON | ) | Christopher E. Lawler, |
| FAIRLEY, an individual, LINDA FRANKO, an | ) | Judge, Presiding. |
| individual, SHANNON HAYES, an individual, SCOTT | ) | |
| ANDO, an individual, ANDREA STOUTENBOROUGH, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Martrice Campbell, Scott Ando Andrea Stroutenborough, | ) | |
| Anthony Finnell, Vincent Jones, James Lukas, City of | ) | |
| Chicago, a Municipal Corporation, Steven "Chip" | ) | |
| Mitchell, and WBEZ, Defendants-Appellants). | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mary Mikva and Justice Maureen Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court granting defendants' section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss because: (1) plaintiff's fourth amended complaint did not demonstrate that defendants commenced and continued the criminal proceeding against him, and (2) he was unable to establish the absence of probable cause required for a malicious prosecution. As plaintiff is unable to establish the underlying tort of malicious prosecution, his other ancillary claims which are dependent on it, must also fail.

¶ 2    Plaintiff Glenn Evans appeals an order of the circuit court of Cook County dismissing his fourth amended complaint pursuant to section 2-615 (735 ILCS 5/2-615 (West 2018)) of the Illinois Code of Civil Procedure (Code) against defendants Martrice Campbell (Campbell), Scott Ando (Ando), Andrea Stoutenborough (Stoutenborough), Anthony Finnell (Finnell), Vincent Jones (Jones), James Lukas (Lukas), and the city of Chicago (the city or Chicago going forward) (collectively defendants) for malicious prosecution.

¶ 3    On appeal, plaintiff contends that the circuit court erred in: (1) dismissing his malicious prosecution claim for failure to state a claim; (2) dismissing plaintiff's ancillary claims for *respondeat superior* liability, indemnification, and conspiracy for failure to state a claim; and (3) dismissing plaintiff's claims against Ando, Jones, Lukas, Finnell, and Stoutenborough because they are not barred by the statute of limitations. For the foregoing reasons, we affirm the trial court's dismissal.

¶ 4                                    BACKGROUND

¶ 5    The record reveals that plaintiff was a commander with the Chicago Police Department (CPD) on January 30, 2013. On that date he was on routine patrol when he and two other officers saw Rickey Williams on a corner with a gun in his hand. When Williams saw the officers, he ran. The officers knew Williams as a known felon who could not possess a gun; they pursued him and arrested him. On January 31, 2013, Williams filed a complaint with the Independent Police Authority (IPRA), alleging that plaintiff put an "all black" gun down his throat and held a taser to

his groin. Williams described plaintiff as a black officer with glasses. The record shows that plaintiff's taser was not signed out on January 30, 2013, and that the gun that he was carrying was silver.

¶ 6      An investigation was conducted by IPRA which led to charges of aggravated battery with a deadly weapon and official misconduct against plaintiff. Ando worked for IPRA as both the deputy chief administrator and chief administrator. Stoutenborough worked for IPRA as the coordinator of investigations. Finnell worked for IPRA as a supervising investigator. Campbell, Jones, Lukas were investigators for IPRA (collectively IPRA defendants).

¶ 7      On February 1, 2013, Lukas interviewed Williams. During the interview, Williams stated that the police officers were in a marked vehicle, which was wrong, Lukas told him it was an unmarked vehicle, Williams then changed his story to reflect that. Williams told Lukas that the officers broke his cell phone but was able to check the time while in lock up.  While interviewing Williams, Lukas did not notice any visible bruising on him. Based on Williams' statement, IPRA proceeded to investigate.

¶ 8      On February 5, 2013, Lukas sent Jones an email detailing how Williams was contemplating changing his story based on a photo of plaintiff that his girlfriend found online showing plaintiff not wearing glasses. Ultimately, no changes were made to Williams' complaint based on this.

¶ 9      On May 4, 2014, Jones and Campbell went to see Williams and conducted a photographic line-up. Williams was shown the photos of 23 officers who were all involved in his arrest and was not able to identify plaintiff.

¶ 10     On July 30, 2014, Chip Mitchell (Mitchell) who worked for WBEZ, contacted plaintiff for an interview and informed him that Campbell, an IPRA investigator gave him documents from the Williams case and they also spoke about the investigation. When Ando learned of the leak, he

reported the breach to the Office of the Inspector General (OIG) and to the Federal Bureau of Investigation (FBI). The OIG opened an investigation. On July 31, 2014, WBEZ reported a story entitled, "CPD leaves commander in post despite assault allegations, DNA match."

¶ 11    On September 17, 2014, plaintiff was indicted and charged with two counts of aggravated battery with a deadly weapon and seven counts of official misconduct. Following a bench trial, on December 14, 2015, plaintiff was found not guilty of all charges. The trial court explained the reason for its decision was based on the inconsistences in Williams' story, his inability to identify plaintiff in a photo array, the DNA evidence being potentially compromised, and the IPRA investigation. Plaintiff returned to work with CPD on April 25, 2016 and was demoted to a desk job in the medical section, against his wishes. Plaintiff was denied back pay, denied restoration of compensatory time taken, lost medical benefits, and lost seniority.

¶ 12    On July 28, 2016, plaintiff filed suit in federal district court in case number 16 CV 07665 against the city of Chicago, Campbell, Jones, Ando, Stoutenborough, Lukas, and Finnell. The complaint alleged: (1) first amendment retaliatory inducement to prosecute against Campbell; (2) *respondent superior* lability and indemnification against the city; and (3) malicious prosecution against Campbell, Jones, Stoutenborough, Lukas, and Finnell. The district court found that probable cause was established based on the DNA found on plaintiff's gun that matched Williams, Williams reported abuse by plaintiff, and plaintiff's participation in the arrest. The district court declined to exercise supplemental jurisdiction on the remaining state claims. The district court dismissed the complaint without prejudice but noted that if no motion for leave to amend was filed,

it would be with prejudice. Plaintiff filed a motion to dismiss his retaliation claim with prejudice and his state law claim without prejudice, which was granted on June 1, 2017.[1]

¶ 13    On August 25, 2017, plaintiff filed his initial complaint against the city, Campbell, Sharon Fairley (Fairley), Linda Franko (Franko), Shannon Hayes (Hayes), Ando and Stoutenborough.[2] The complaint alleged malicious prosecution (count I) against Campbell[3], tortious interference with prospective economic advantage (count II) against all defendants, *respondeat superior* against the city (count III), and indemnification (count IV).

¶ 14    Count I alleged that Campbell's leak to Mitchell influenced the initiation of criminal proceedings to the point of a recommendation to the State to indict plaintiff.  He claims that he would not have been indicted if it were not for the malicious acts of Campbell. Plaintiff alleged that the criminal proceedings lacked probable cause because: there was no evidence to establish that plaintiff knowingly, without legal justification, caused bodily harm to Williams or made physical contact with Williams while using a deadly weapon other than discharge of a firearm without legal justification, and; there was no evidence to establish that plaintiff, while acting in his official capacity, knowingly performed an act that he knew was forbidden by law during the arrest of Williams. Plaintiff alleged that he suffered special injuries and damages in defending the criminal suit including the inability to continue as a police officer on the street. Plaintiff sought compensatory damages and other equitable and just relief.

---

[1] Plaintiff filed a second suit against the city and a CPD employee under case number 17 CV 5122, alleging retaliation and race discrimination arising from the incident of Williams' arrest and complaint. The district court dismissed the complaint as barred by *res judicata*.
[2] All named defendants were employees of IPRA.
[3] Plaintiff contends that Campbell's attitude towards him resulted from a situation in 1991, when Campbell worked for CPD and plaintiff initiated a complaint against Campbell for insubordination, which resulted in a suspension.

¶ 15    Count II, alleged that plaintiff had a reasonable expectancy of a valid business relationship with CPD, where he expected to have continued employment, promotions, and pay raises throughout his career and that defendants knew of this expectancy. Plaintiff alleged that defendants intentionally and continually interfered with plaintiff's expectancy by preventing him from obtaining seniority, rank, and pay status. This was done by destroying his reputation, subjecting him to unwarranted investigations, threatening him, causing criminal charges to be brought against him, and denying him the restoration of his rank, back pay and benefits. Due to this interference, plaintiff suffered damages in the form of loss of reputation, anxiety, attorney's fees, loss of income, loss of compensation time, loss of seniority, loss of rank, loss of pay status, loss of pension time credit, and emotional distress. Plaintiff sought compensatory damages and other just and equitable relief.

¶ 16    Count III alleged that while committing all of the acts alleged herein, the individual defendants were employed by and acting as agents of the city. Plaintiff alleged that the city was liable as a principal for all torts committed by its agents.  As such, plaintiff sought for the city to be liable for any judgment he obtained.

¶ 17    Count IV alleged that the city was the indemnifying entity for the actions of the individual defendants, because they performed their duties in the scope of their employment with the city of Chicago. Plaintiff sought to have the city be found liable of the claims alleged in the complaint.

¶ 18    On October 10, 2017, plaintiff sought leave to file his first amended complaint seeking to add two additional parties, Mitchell and WBEZ; the circuit court granted the motion. The first amended complaint was filed on the same day and the claims were identical to the initial complaint.

¶ 19    The second amended complaint was filed on October 30, 2018, with leave of court, it was substantially similar to the previous filings. In addition, it alleged malicious prosecution against

Ando, Stoutenborough, Finnell, Jones, and Lukas. The second amended complaint also added additional claims of abuse of process and civil conspiracy against the same defendants and Campbell.

¶ 20    On March 26, 2019, plaintiff filed a third amended complaint with leave of court. Plaintiff added a claim of defamation based on false statements that investigators made to Mitchell and WBEZ.

¶ 21    On November 1, 2018, defendants filed a motion to dismiss plaintiff's third amended complaint pursuant to section 5/2-619.1 (735 ILCS 5/2-619.1 (West 2018)). Defendants alleged that plaintiff failed to state a claim pursuant to section 2-615 (735 ILCS 5/2-615 (West 2018). Additionally, defendants alleged that defendant was in violation of the single filing rule, and that his claims were not brought in a timely manner pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)). The circuit court held that plaintiff failed to state a claim when he: plead the absence of probable cause for his malicious prosecution claim; failed to establish that these defendants commenced the proceedings against him in his abuse of process claim; was unable to demonstrate that defendants acted within the scope of their employment in his civil conspiracy claim; did not allege who published statements, how they were published, when they were published, and the injury received in his defamation claim; and, failed to plead an underlying tort or other action for his claims of *respondeat superior* and indemnification. The circuit court granted the motion without prejudice and declined to apply section 2-619 on September 13, 2019.

¶ 22    On October 11, 2019, plaintiff filed a fourth amended complaint against defendants in the instant case with leave of court. The complaint alleged: malicious prosecution against Ando, Jones, Campbell, Finnell, and Lukas (count I), abuse of process against Ando, Jones, Finnell, and Campbell (count II), tortious interference with prospective economic advantage against Mitchell

(count III), civil conspiracy against all IPRA defendants (count IV), defamation against Campbell and Finnell (count V), *respondeat superior* against the city (count VI), indemnification against the city (count VII). Plaintiff dismissed and re-plead solely for the purposes of preservation his claims of *respondeat superior* (count VIII) against WBEZ for the tortious interference with prospective economic advantage claim.

¶ 23    Count I alleged that malicious prosecution occurred when Jones, Finnell, Campbell, and Lukas, fabricated evidence and created a false narrative in order to initiate charges against plaintiff. Plaintiff alleged that the State relied exclusively on IPRA to investigate. Plaintiff alleged that Ando, Jones, Finnell, Campbell, and Lukas supplied false information to the State. Plaintiff alleged that Ando, Jones, Finnell, Campbell, and Lukas omitted inconsistencies and contradictions which suggested that Williams was lying to the State. Plaintiff alleged that the proceedings against him were terminated when he was acquitted on December 14, 2015. Plaintiff alleged that the IPRA defendants knew there was no probable cause because there was no evidence to support that plaintiff knowingly, and without legal justification, caused bodily harm to Williams or made physical contact with Williams without legal justification. Plaintiff alleged that the IPRA defendants acted maliciously and out of personal animosity toward plaintiff by omitting facts and presenting false evidence. Plaintiff alleged he suffered special damages beyond the time spent defending himself such as damages to his career and reputation. Plaintiff sought damages in excess of $50,000 and other equitable relief.

¶ 24    Count II alleged abuse of process when Ando, Jones, Finnell, and Campbell had ulterior motives and maliciously sought to have him prosecuted out of personal grudges or animosity. Plaintiff alleged that by causing him to be charged, they abused the legal process. Plaintiff alleged that removing a commander from his position in a police force is not a regular or legitimate use of

process. Plaintiff alleged that the legal process that was initiated was based on false information. Plaintiff alleged that he suffered special injuries and damages as a result of the abuse of process including by, among other things, being demoted and restricted to a desk job. Plaintiff sought damages in excess of $50,000 and other equitable relief.

¶ 25    Count III alleged tortious interference with prospective economic advantage. Plaintiff alleged he had a reasonable expectancy of a valid business relationship with the CPD in that he expected to have continued employment, promotions, and pay raises throughout his career. Plaintiff alleged Mitchell knew of plaintiff's expectancy and intentionally and continually interfered with plaintiff's expectancy and has prevented plaintiff from obtaining seniority, rank, and pay status with CPD, including but not limited to causing him to be demoted; destroying his reputation; causing him to lose pay and benefits; and causing criminal charges to be brought against him. Plaintiff alleged he suffered damages in the form of loss of income, loss of compensation time, loss of seniority, loss of rank, loss of pay status, and loss of pension time credit. Plaintiff sought damages in excess of $50,000 and other equitable relief.

¶ 26    Count IV alleged civil conspiracy when IPRA defendants worked together with Williams, Mitchell, and WBEZ with the intent to harm plaintiff. Plaintiff alleged that together they worked to remove plaintiff from CPD, publicly attacked his reputation, obstructed justice, and maliciously brought false charges against him. Jones, Finnell, and Campbell emailed each other using official IPRA accounts and personal accounts, sharing confidential information with Mitchell and WBEZ to get plaintiff removed from his position. In support thereof, plaintiff made the following allegations. First, Lukas worked with Williams to create a false statement about misconduct to attack plaintiff. Next, Campbell falsified a report about speaking to CPD representatives and plaintiff having access to a taser, and omitted evidence establishing that plaintiff did not have a

taser on the day in question. Ando, Jones, Stoutenborough, Finnell, Campbell, and Lukas participated in the investigation that provided false information about the Williams' arrest to cause the State to prosecute plaintiff.   Campbell and Finnell allegedly released confidential information to Mitchell and caused the publication of false news stories on WBEZ to pressure the State to prosecute plaintiff. Plaintiff also contended that Jones assisted Williams in changing his story to be more consistent, in order to continue the proceedings against plaintiff. Plaintiff sought damages in excess of $50,000 and other equitable relief.

¶ 27     Count V alleged defamation where Campbell and Finnell made and supplied false and defamatory statements and information about plaintiff to Mitchell and WBEZ for publication. Plaintiff alleged that the false and defamatory statements were that plaintiff: received 114 misconduct complaints, approximately half of them alleged excessive force throughout his career; has been suspended from duty 11 times; and because of his alleged actions, the police brutality lawsuit against him for allegedly putting his pistol in a subject's mouth could cost taxpayers more than a quarter million dollars. Plaintiff maintained that Campbell and Finnell had actual knowledge that the information or statements that they made were false and acted in malice when making said statements. Alternatively, plaintiff alleged that Campbell and Finnell acted in reckless disregard for whether the statements were true or false.  Plaintiff alleged he suffered injuries as a result of these false statements including damage to his reputation that caused or led to his demotion. Plaintiff sought damages in excess of $50,000 and other equitable relief.

¶ 28     Count VI alleged that by committing the acts alleged in Counts I through V, while employed and acting as agents of the city, the city was liable as the principal for their actions under the theory of *respondeat superior*. Plaintiff alleged that in committing the acts, the IPRA defendants acted maliciously, willfully, and wantonly to violate plaintiff's rights. Plaintiff sought

a judgment against the city equal to any amounts entered against Ando, Stoutenborough, Jones, Finnell, Campbell, or Lukas on any claim, and other equitable relief.

¶ 29    Count VII alleged that the city was required to indemnify the IPRA defendants because their actions occurred during the scope of their employment with the city. Plaintiff sought a judgment against the city equal to any amounts entered against Ando, Stoutenborough, Jones, Finnell, Campbell, or Lukas on any claim and other equitable relief.

¶ 30    Count VIII alleged that in committing the acts alleged, Mitchell was employed and acted as an agent of WBEZ making it liable as principal for the acts committed by its agent.  Plaintiff alleged that WBEZ's producers and editors were aware of Mitchell's stories about plaintiff and elected to publish the material, despite the apparent inconsistencies in the accounts and that the allegations that came from an "11-time convicted felon." Plaintiff sought a judgment against WBEZ equal to any amount entered against Mitchell and other equitable relief. At some point prior to the circuit court issuing its ruling, Mitchell and WBEZ were dismissed as defendants.  The exact date of their dismissal is not reflected in the record.

¶ 31    Two motions to dismiss the fourth amended complaint were filed on November 1, 2019. The city, Ando, Stoutenborough, Jones, Finnell, and Lukas filed a combined motion containing section 2-615 (735 ILCS 5/2-615 (West 2018)) and 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)), pursuant to section 2-619.1 (735 ILCS 5/2-615 (West 2018)) (735 ILCS 5/2-619.1 (West 2018)). Those defendants argued that the fourth amended complaint should be dismissed pursuant to section 2-615 because plaintiff failed to state a cause of action for malicious prosecution. Defendants argued that plaintiff failed to establish malice, the absence of independent probable cause, and that the defendants did not commence and continue the criminal proceedings against him. Defendants argued that plaintiff's abuse of process claim was identical to the previous claim

alleged in his third amended complaint that was dismissed, and that the fourth amended complaint should be dismissed for the same reason. Defendants argued that plaintiff's civil conspiracy claim should fail because he did not plead facts to show that any defendant agreed with another to accomplish an unlawful purpose or commit an overt tortious or unlawful act that could form the basis for a conspiracy. Defendants argued that plaintiff's defamation claim should fail because plaintiff made conclusory statements that failed to demonstrate malice or that Finnell made a false statement or communicated to anyone in the media. Finally, defendants argued that plaintiff's claims for indemnification and *respondeat superior* should be dismissed because no substantive change was made from the third amended complaint that was dismissed and there were no underlying actions that can bring forth these actions.

¶ 32    Defendants sought to have plaintiff's counts I, II, IV, V, VI, and VII dismissed pursuant to section 2-619(a)(5) based on timelines. Defendants argued that plaintiff filed the claims on October 30, 2018, more than a year past his voluntary dismissal of his state law claims in district court, June 1, 2017. The statute of limitations provided that plaintiff had one year after the dismissal to file a timely complaint in state court pursuant to 735 ILCS 5/13-217 (West 2018).

¶ 33    The second motion to dismiss was filed by Campbell. Campbell argued that plaintiff failed to state a malicious prosecution claim because there was probable cause for the proceedings and plaintiff failed to establish the absence of it, as required. Additionally, Campbell argued that she did not commence or continue the criminal proceedings because she had no contact with the State, which did its own investigation, and was just a "low-level" IPRA investigator. Campbell argued that at no point did plaintiff's allegations demonstrate that the State relied on false information from her. Campbell argued that despite plaintiff's conclusory statements, she did create a memorandum which indicated Williams was unable to identify plaintiff in a line up and this

document was among the documents retrieved from the State by plaintiff. Additionally, Campbell argued that the claim that she falsely reported on the taser must fail because the report she created indicated that the taser logs did not show any taser signed out to plaintiff.

¶ 34    Campbell argued that plaintiff failed to state an abuse of process and defamation claim that was different from the claims the circuit court previously dismissed, and should therefore, be dismissed. Campbell argued that plaintiff's civil conspiracy claim failed to explain how all of the named defendants knew of, and voluntarily entered into an agreement with each other, to harm plaintiff. Further, Campbell argued that the civil conspiracy claim was dependent on an underlying tort, which plaintiff failed to plead.

¶ 35    Lastly, Campbell argued that pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)), plaintiff's abuse of process, defamation and civil conspiracy claims were time-barred and should have been dismissed. Campbell argued that the abuse of process claim had a one-year statute of limitations that expired since the process complained of expired on September 17, 2015, pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) (745 ILCS 10/8-101(a) (West 2014)), and plaintiff did not file a claim against Campbell until October 30, 2018. Campbell argued that the defamation claim has a one-year statute of limitations pursuant to the Immunity Act and in general defamation claims in Illinois have a one-year statute of limitations under 735 ILCS 5/13-201 (West 2014). Campbell argued that plaintiff did not allege a specific date that Campbell made defamatory comments but identified articles from July 31, 2014, and August 5, 2014, exceeding the statute of limitations when he filed against her on October 30, 2018. Campbell argued that the civil conspiracy claim was time barred according to the underlying tort which was also time barred.

¶ 36 On November 27, 2019, plaintiff filed a response to the motion filed by the city, Ando, Stoutenborough, Jones, Finnell, and Lukas, arguing that he pled sufficient facts to establish malicious prosecution, abuse of process, civil conspiracy, and tortious interference. Plaintiff argued that malicious prosecution was properly plead because the facts in the complaint supported the inference that the IPRA defendants knew he did not commit a crime and that they objectively lacked an honest and sound basis to believe he did. Plaintiff argued that defendants played a significant role in the criminal case by supplying false information, concealing exculpatory evidence, pressuring prosecutors, and acting in bad faith to obtain charges against him and they could be found liable based on those actions. Plaintiff argued he properly established malice on the part of the parties. Plaintiff argued he properly plead abuse of process when the complaint alleged that defendants had an ulterior motivation, other than bringing someone to justice, in seeking to remove him as a commander. Plaintiff argued that the complaint sufficiently explained how the defendants worked together to create pressure to bring charges against him. Plaintiff further argued that the complaint sufficiently pled malice when it stated that Finnell sought out Mitchell to obtain publication for false and misleading information to damage plaintiff. He contended that the city was liable for the conduct of its employees when they are acting within the scope of their employment. Lastly, plaintiff argued that claims of timeliness cannot be determined at the motion to dismiss stage. However, plaintiff argued that the claims filed on October 30, 2018, should relate back to the original federal filing in July 2016.

¶ 37 On the same date of November 27, 2019, plaintiff filed a response to the motion to dismiss filed by Campbell, arguing that the cases she cited to were federal and had no precedential value in state court. Moreover, plaintiff argued that he properly pled a lack of probable cause because of the conduct of the IPRA defendants and the evidence submitted. Plaintiff suggests that Campbell

attempted to shift the blame to the State, even though a person could be liable for commencing and continuing a criminal proceeding even though they did not have prosecutorial power. Plaintiff argued that the complaint states a claim for abuse of process, Campbell's argument ignored her involvement and attempts to again, shift the blame to the prosecutors. Plaintiff argued that the complaint alleged in detail how the IPRA defendants and Williams played a role in the common scheme to bring false charges against him and have him removed. Plaintiff maintained that Campbell's argument against defamation ignored the allegations in the complaint about her and Mitchell's efforts to publish false and misleading information to damage plaintiff's reputation. Lastly, plaintiff contended that the claims were timely because they related back to his July 2016 district court complaint.

¶ 38    Defendants filed two replies to plaintiff's responses on December 20, 2019.  The first was by the city, Ando, Stoutenborough, Jones, Finnell, and Lukas. Their reply reiterated that the complaint failed to state a claim of malicious prosecution, abuse of process, civil conspiracy, defamation, *respondeat superior* and indemnification. Defendants claimed that plaintiff's abuse of process and defamation claims failed because they were untimely, and they were untimely even before he filed his first lawsuit. Defendants argued that the abuse of process claim was based on the filing of the indictment on September 17, 2014.  As such the statute of limitations would have expired on September 17, 2015, prior to the federal filing in July 2016.  According to defendants, the defamation claim was based on publications issued in July or August 2014; the statute of limitations on this allegation would have expired in August 2015, which was also prior to the federal filing in July 2016. Plaintiff's malicious prosecution claim accrued as of the date of his acquittal, December 14, 2015, and expired pursuant to the Immunity Act on December 14, 2016. Defendants argued plaintiff voluntarily dismissed his federal suit on June 1, 2017, therefore, he

was required to refile his malicious prosecution claims, against Ando, Jones, Finnell, and Lukas,[4] prior to June 1, 2018.

¶ 39   Campbell also filed a reply, arguing that the plaintiff's response was conclusory and ignored the case law that she cited. Campbell argued that plaintiff provided the same arguments in his fourth amended complaint as he did in the third amended complaint. Since, there had been no difference, Campbell argued that the result should be the same and the fourth amended complaint should also be dismissed.  Lastly, Campbell replied that plaintiff's complaint was already untimely when he filed his first complaint in district court.

¶ 40   On February 3, 2020, the circuit court rendered its decision in the matter in a written order. It held that plaintiff failed to state a claim for malicious prosecution (count I) against Ando, Jones, Campbell, Finnell, and Lukas because the pleadings demonstrated that defendants did not commence and continue the criminal proceedings against plaintiff; the State did. The circuit court agreed with defendants, that the State had evidence from which it could formulate its own, independent probable cause to file charges. While the actions of the IPRA defendants could have contributed to the decision to file charges, it was ultimately the State's independent decision to commence the criminal proceedings.

¶ 41   The circuit court found that plaintiff's abuse of process claim (count II) against Ando, Finnell, and Jones failed to state a claim. The circuit court found that the named defendants committed these acts out of "personal animus" toward plaintiff. However, it found that the named defendants' conduct merely contributed to the State's independent decision to file criminal charges

---

[4] Plaintiff filed his initial state court complaint in August 2017; however, he did not file a malicious prosecution claim against Ando, Jones, Finnell, and Lukas. He did not reassert that claim against those defendants until he filed his second amended complaint on October 30, 2018.

against him. Further, plaintiff did not show that defendants used the legal process "to accomplish some result that is beyond the purview of the process."

¶ 42    The circuit court found that the civil conspiracy claim (count IV) against Fairley, Ando, Southborough, Finnell, Jones, and Lukas failed to state a cause of action. The circuit court found that defendants conducted these acts alleged while acting as agents of the city and as an agent there cannot be a conspiracy between a principal (the city) and an agent (the IPRA defendants).

¶ 43    The circuit court found that the defamation claim (count V) against Finnell failed to state a cause of action because plaintiff failed to plead which defendant published the statements in question to WBEZ, when they did so, and how. Plaintiff's *respondeat superior* (count VI) and indemnification (count VII) claims failed because they failed to state any underlying claims for which the city can be liable. Lastly, the circuit court agreed with the defendants that plaintiff's claims were time barred. Therefore, if needed, a section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)) motion to dismiss would have been warranted. The circuit court granted the defendants' motions to dismiss pursuant to section 2-615 (735 ILCS 5/2-615 (West 2018) and dismissed plaintiff's fourth amended complaint with prejudice. Plaintiff filed this timely appeal on March 3, 2020.

¶ 44                                              ANALYSIS

¶ 45    On appeal, plaintiff contends that the circuit court erred in: (1) dismissing his malicious prosecution claim for failure to state a claim; (2) dismissing his ancillary claims for *respondeat superior* liability, indemnification, and conspiracy for failure to state a claim; and (3) dismissing plaintiff's claims against Ando, Jones, Lukas, Finnell, and Stoutenborough because they are not barred by the statute of limitations.

¶ 46                                        A. Standard of Review

¶ 47    Section 2-619.1 (735 ILCS 5/2-619.1 (West 2018)) of the permits a party to combine a section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619(a)(5) (735 ILCS 5/2-619 (West 2018)) motion to dismiss based upon certain defects or defenses. *Edelman, Combs, and Latturner v. Hinshaw and Culbertson*, 388 Ill. App. 3d 156, 164 (2003). It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619(a)(5) to accept all well-pleaded facts in the complaint as true and to draw all reasonable inferences from those facts in favor of the nonmoving party. *Id.* Our review is *de novo* for a motion to dismiss brought under both section 2-615 and 2-619. *Id.*

¶ 48    A motion to dismiss pursuant to section 2-615 of the Code challenges a complaint's legal sufficiency based on defects apparent on its face. *Marque Medicos Archer LLC v. Liberty Mutual Ins. Corp.,* 2018 IL App (1st) 163350, ¶ 13. In determining the sufficiency of a complaint, we must construe the allegations in the light most favorable to the plaintiff and determine whether they state a cause of action upon which relief can be granted. *Id.* All well-pleaded facts and all reasonable inferences drawn from those facts, are taken as true. *Id.* Dismissal is appropriate only where it is apparent that no set of facts can be proven that would permit the plaintiff to recover. *Id.*

¶ 49    Section 2-619(a)(5) provides for involuntary dismissal based upon certain defects or defenses. *Edelman, Combs, and Latturner,* 388 Ill. App. 3d at 164. Section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)) pertains to causes of action not commenced within the time required by law. *Ferguson v. City of Chicago*, 213 Ill. 2d 9, 96-7 (2004).

¶ 50                                        B. Collateral Estoppel

¶ 51    As a preliminary matter, defendants[5] contend that because plaintiff previously raised a claim of malicious prosecution in district court, which dismissed the federal claims and failed to exercise supplemental jurisdiction over state claims, collateral estoppel is applicable citing *Schandelmeier-Bartels v. Chicago Park District,* 2015 IL App (1st) 133356, as support. Further, when the district court dismissed plaintiff's retaliation claim, it had to address whether probable cause existed in order to support the underlying state charges. Plaintiff's complaint alleged that since the IPRA investigation was "botched and incomplete" there was no probable cause to prosecute him. The district court determined that the face of his complaint contained facts amounting to probable cause when the allegations provided: Williams filed a complaint within a few days of being arrested alleging that plaintiff put a gun in his mouth and a taser to his groin, and DNA evidence of Williams was found on the gun. Defendants contend plaintiff's malicious prosecution claim in this case makes the same allegations, therefore, plaintiff is barred from raising these claims. Plaintiff however argues that collateral estoppel was never raised in the trial court and is therefore forfeited. Additionally, plaintiff contends that the complaints at hand are different and not identical, therefore, collateral estoppel cannot apply.

¶ 52    In the case at bar, we find that plaintiff is not barred from raising the issue of malicious prosecution based on collateral estoppel. Collateral estoppel prevents a party from relitigating an issue that has already been decided in a prior proceeding. *Farwell v. Senior Services Associates, Inc.*, 2012 IL App (2nd) 110669, ¶ 13. "Collateral estoppel, also known as issue preclusion, is a branch of *res judicata.*" *Dancor Const. Inc., v. FXR Const. Inc.,* 2016 IL App (2d) 150839, ¶ 60. Collateral estoppel is an affirmative defense and must be raised below; failure to raise it in the trial

---

[5] On appeal, all of the remaining defendants filed a response collectively.

court results in forfeiture. *Id.* Defendants here have raised the issue of collateral estoppel for the first time on appeal. Thus, they have forfeited this affirmative defense. *Id.*

¶ 53                                    C. Malicious Prosecution

¶ 54    Plaintiff contends that the circuit court erred in determining that the defendants could not be liable for malicious prosecution because they did not initiate or commence any charges, but rather the State did. Plaintiff contends that the conclusion that the State had independent and untainted evidence to initiate charges was improper because defendants supplied the State with the information to initiate those charges, concealed exculpatory evidence, pressured prosecutors, and acted in bad faith to obtain charges against him. Plaintiff contends that this is sufficient for a malicious prosecution claim because a commonsense assessment would demonstrate that the defendants played a significant role in the criminal case, citing *Beaman v. Freesmeyer*, 2019 IL 122654, as support. Plaintiff contends that the issue of whether the IPRA defendants proximately caused the prosecution and whether prosecutors had independent untainted evidence of DNA would be a question of fact that cannot be resolved on a motion to dismiss.

¶ 55    Defendants contend that the circuit court properly dismissed the malicious prosecution claim because plaintiff's allegations established that there was probable cause to institute the proceedings and that the State, not the IPRA defendants, commenced the prosecution. Defendants contend that the existence of probable cause alone constitutes an absolute bar to a claim of malicious prosecution, citing *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 73 (2003), as support.

¶ 56    Defendants contend that the circuit court properly found that plaintiff's fourth amended complaint failed to allege facts to establish that any of the IPRA defendants took actions to overcome the prosecution's independence. Plaintiff alleges that Finnell, Campbell, and Lukas

supplied false information to the State. However, plaintiff did not provide any facts to demonstrate that those defendants had any contact with the State, nor did he demonstrate that they improperly applied pressure in order for the State to prosecute him. Plaintiff's allegation that Finnell and Campbell applied pressure by leaking confidential information to Mitchell is conclusory and does not demonstrate that they had any contact with the State. Plaintiff's allegation that Ando and Jones personally exerted pressure on the State is also unpersuasive when the alleged contact consisted of: Ando contacting the State and recommending charges and Jones personally presenting the State with false information created by the IPRA defendants while suppressing the true facts and exonerating information. Defendants contend that this did not explain how Ando and Jones overcame prosecutorial independence. Defendants contend these allegations are not just vague but also are contradicted because they did disclose evidence. Defendants contend plaintiff failed to allege any facts that detail Stoutenborough's specific involvement with his prosecution that overcame prosecutorial independence. Since plaintiff cannot establish that "wrongful or bad-faith conduct overcame prosecutorial independence," this is why the circuit court properly dismissed the fourth amended complaint citing *Beaman* as support. 2019 IL 122654. Defendants argue that *Beaman* is further distinguishable because the IPRA investigators did not play a direct role in investigating or prosecuting his case, instead, their duty was to investigate complaints against members of the CPD and provide the State with a recommendation, they did not conduct a criminal investigation.

¶ 57    Defendants contend that plaintiff's fourth amended complaint pled facts that establish probable cause which requires dismissal of the malicious prosecution claim. Plaintiff's complaint alleged: he participated in Williams' arrest; the following day, Williams filed a complaint alleging plaintiff abused him by placing a gun in his mouth; the Illinois State Police found DNA on

plaintiff's gun that matched Williams' DNA; and a grand jury indicted plaintiff. Defendants contend that the allegations made by Williams alone were sufficient to establish probable cause citing *Kim v. City of Chicago*, 368 Ill. App. 3d 648 (2006), as support.

¶ 58    "To state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26. All of these elements are required for a malicious prosecution claim. *Id.*

¶ 59    Therefore, "liability for malicious prosecution requires an examination of whether the defendant's conduct is both the cause in fact and a proximate cause of the commencement or continuation of the original criminal proceedings." *Beaman*, 2019 IL 122654, ¶ 46. ("To sustain the action [for malicious prosecution], it must affirmatively appear as a part of the case * * * that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion.") In determining whether the defendants' conduct was the proximate cause of the commencement or continuation of the original criminal proceedings, the court must examine whether the defendants played a significant role in the plaintiff's prosecution. *Id.*

¶ 60    The significant role assessment includes those whose participation in the criminal case was so "active and positive" to "amount to advice and co-operation" or those persons who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution" *Id.* at ¶ 45. Liability for malicious prosecution "calls for a commonsense assessment" of those who played a significant role. *Id.*

¶ 61    The IPRA defendants played a role in having plaintiff prosecuted, however, they were limited in that role. The IPRA defendants were confined to providing a recommendation based on their investigation. Although the IPRA defendants recommended to the State that charges be brought against plaintiff, there is nothing that indicates any further direct influence; their final role was to make such recommendations. Next, plaintiff alleged that Finnell and Campbell exerted their influence on the State by releasing false and confidential information to WBEZ and Mitchell. The complaint also alleged that the release was done to sway public opinion, to get plaintiff removed from his position, and to defame him. The complaint referenced no facts to suggest that the media coverage surrounding Williams' complaint pressured prosecutors nor were there facts that indicated that this was done in furtherance of adding any pressure to the State; the complaint provided mere speculation that this was done in furtherance of adding pressure to the State.

¶ 62    Plaintiff contends that his fourth amended complaint alleged that the IPRA defendants acted improperly, concealed exculpatory evidence, and omitted inconsistencies of Williams' statements when they proceeded to bring charges:  specifically, Williams did not show any visible signs of bruising despite claiming he was abused, Williams was able to check his cell phone in lock up despite saying that officers broke it, Williams was unable to identify plaintiff in a photo lineup of 23 officers, Lukas assisted Williams in elaborating his initial story and providing him factually accurate information to supplement his statement, Campbell had proof that plaintiff's CPD issued taser was not signed out on the day and question, Williams identified an "all-black" gun when plaintiff's gun was silver, and an email from Lukas bringing to Jones' attention that Williams was going to formally change his statement to indicate that plaintiff was not wearing glasses based on an online photo that his girlfriend found, but declined to do so. None of these matters were a catalyst for the State to press charges, and therefore, were not instrumental to the

commencement of the criminal proceedings. *Beaman*, 2019 IL 122654, ¶ 44. Ultimately, Williams, on his own free will, filed a complaint after his arrest. The crux of his complaint did not change, which was that he was assaulted by an officer who he later identified as plaintiff. This information was further corroborated by physical evidence. Even though plaintiff contests the reliability of that DNA; a DNA match was still found. Although the IPRA defendants may have engaged in impermissibly coaching Williams, they were not the ones who set this into motion. Additionally, it cannot be said that the charges would not have been commenced but for their impropriety. *Id*. at ¶ 46. Based on the aforementioned analysis, we must agree with the circuit court, that the behavior of the defendants was improper; nonetheless, the actions do not amount to the commencement or continuing of the criminal proceedings against plaintiff.

¶ 63    The absence of one of the elements, is enough to bar the claim of malicious prosecution. Nonetheless, we will look to the next element of whether there was probable cause for the proceedings. "In the context of a malicious prosecution case, probable cause is a statement of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Sang Ken Kim v. City of Chicago*, 386 Ill. App. 3d 648, 654 (2006). "It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Id*. "When there is an honest belief by the complainant that the accused is probably guilty of the offense, a mistake or error that is not grossly negligent will not affect the question of probable cause. *Id*. at 654-55. The complainant is not required to verify the correctness of each item of information obtained; it is sufficient to act with reasonable prudence and caution. *Id*. at 655. In addition, "[w]here the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *Id.*

¶ 64    Plaintiff points to the discrepancies of Williams' account to demonstrate a lack of probable cause in regard to gun color; access to taser; and touch DNA. However, inconsistencies do not negate probable cause when they do not suggest anything to further the belief that the probability of plaintiff committing the crime was unreasonable. *Johnson*, *341* Ill. App. 3d at 73. Even if we consider the inconsistencies, plaintiff's complaint nonetheless affirmed that he was present at Williams' arrest and DNA evidence matching Williams was found on plaintiff's gun.  Based on these two facts alone, it is not unreasonable to think that plaintiff committed the crime.  Further, despite the inconsistencies, the charges of aggravated battery with a firearm and official misconduct, were supported by Williams' initial complaint as there is a presumption that the information a victim provides is inherently reliable. *Sang Ken Kim*, 386 Ill. App. 3d at 654.

¶ 65    The state of mind that is in question is that of whom commenced the prosecution; the State. *Sang Ken Kim*, 386 Ill. App. 3d at 654. There was nothing in plaintiff's fourth amended complaint to suggest that the State believed that he was innocent. *Id*. at 654-55. Plaintiff does not provide any facts to demonstrate that the complainant, the State, commenced and continued the criminal proceedings in error or that the State was grossly negligent. *Id.*  at 654-55.  Further, given Williams' statement complaining that plaintiff stuck a gun in his mouth and put a taser to his groin, coupled with the presence of Williams' DNA found on plaintiff's gun; an ordinary person could conclude that plaintiff committed the crime.  *Id*. at 654. Therefore, we find that plaintiff failed to plead the absence of probable cause necessary for a malicious prosecution claim.  As such, the trial court did not err in granting the motion to dismiss for failure to state a claim.

¶ 66                                    B. Ancillary Claims

¶ 67    Plaintiff contends that if this court finds that the malicious prosecution claim is adequately pled and warrants reversal, so should his ancillary claims of claims of *respondeat superior*,

indemnification, and civil conspiracy. Defendants contend the trial court properly dismissed the ancillary claims of *respondeat superior*, indemnification, and conspiracy because plaintiff failed to plead any underlying tort claims to support them citing *Beaman* in support. On appeal plaintiff only challenges his malicious prosecution claim, along with the ancillary claims. However, without properly pled underlying tort claims, plaintiff cannot sustain his ancillary claims. *People v. Beaman*, 2019 IL App (4th) 160527, ¶ 128.

¶ 68    We agree with defendants, and plaintiff acknowledges, that his ancillary claims are dependent on his only remaining tort claim of malicious prosecution. Because we have found plaintiff is unable to demonstrate that he properly plead the claim of malicious prosecution, the remaining ancillary claims must also fail. *Id.*

¶ 69    Accordingly, because we have found plaintiff has no viable claim, we need not reach plaintiff's alternate contention that dismissal was not justified because the statute of limitations did not expire.

¶ 70                              C. Statute of Limitations

¶ 71    Plaintiff contends that the circuit court erred in its determination that the fourth amended complaint also warranted a dismissal pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2018)). Plaintiff maintains that he has preserved his claims because of his filing in district court in July 2016. On the other hand, defendants contend that plaintiff filed his claims on October 30, 2018, more than a year past his voluntary dismissal of his state law claims in district court on June 1, 2017, and that said claims should have been filed by June 1, 2018, pursuant to 735 ILCS 5/13-217 (West 2018).

¶ 72                                    CONCLUSION

¶ 73    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 74     Affirmed.